**STATE of Minnesota, Respondent,**

v.

**Christian N. FRANKS, Appellant.**

**No. A06–1242.**

Court of Appeals of Minnesota.

Dec. 4, 2007.

John M. Stuart, State Public Defender, Bridget Kearns Sabo, Assistant State Public Defender, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN and Mark A. Ostrem, Olmsted County Attorney, Katherine M. Wallace, Assistant County Attorney, Rochester, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; SHUMAKER, Judge; and STONEBURNER, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges his conviction of engaging in a pattern of harassing conduct, arguing that the conviction is not supported by sufficient evidence. In the alternative, appellant argues that the district court erred by sentencing him on the four counts of violation of an order for protection rather than the single count of engaging in a pattern of harassing conduct because the latter is a more-serious offense. Appellant also challenges the imposition of permissive consecutive sentences for the four violation-of-an-order-for-protection offenses based on his contentions that (1) the district court erroneously concluded that these offenses are crimes against a person, and (2) the aggregate length of the sentences imposed unfairly exaggerates the criminality of his conduct. We affirm.

## FACTS

Appellant Christian Franks and J.R. met in 1996 and were married in June 2002. They have two sons together, born in 1996 and 2001, respectively. In late January 2003, the couple separated, and Franks moved out. In early February, Franks returned to the home that the couple had shared, threatened to kill J.R., and dragged her around the house while he searched for a shotgun.

As a result of this incident, J.R. obtained an order for protection (OFP) against Franks on February 10, 2003. The OFP prohibited Franks from "contact, either direct or indirect, with [J.R.] or the children, whether in person, with or through other persons, by telephone, letter, or in any other way," except under limited circumstances that are not relevant here. Although Franks was aware of the OFP, he broke into J.R.'s home on February 21, 2003, and sexually assaulted her. Franks was arrested and subsequently charged with terroristic threats for the altercation in early February and third-degree criminal sexual conduct, first-degree burglary, and violation of an OFP for the incident on February 21.

In October 2003, Franks pleaded guilty to the charges of terroristic threats, third-degree criminal sexual conduct, and first-degree burglary. The state dismissed the charge of violation of an OFP pursuant to a plea agreement. In January 2004, Franks was sentenced to a total of 78 months' imprisonment for the three convictions. Consequently, when J.R. obtained a subsequent OFP in February 2004, which renewed the restrictions of the original OFP, a copy of the OFP was served on Franks in prison.

Between March 5 and August 2, 2004, Franks wrote a series of letters from prison. On March 5, 2004, and June 18, 2004, Franks sent letters to his sons. In those letters, Franks acknowledged that J.R. was "mad" at him and urged his sons to persist in seeking J.R.'s consent to their visitation with Franks. Franks also sent J.R. two letters postmarked July 22, 2004, and August 2, 2004. In these letters, Franks acknowledged his understanding that J.R. did not want him to know about her life, repeatedly referred to the February assaults, and purported to apologize. But he also accused J.R. of "playing a game with [him]."

Franks also sent a letter to J.R.'s parents in 2004, asking them to convince J.R. to permit visitation with the children. In two letters sent to J.R.'s friend during the summer of 2004, Franks lewdly detailed his sexual history with J.R. and discussed friends of J.R. with whom he had sex during his relationship with J.R. Franks also inquired about J.R.'s personal life and indicated that he "[did not] care" if J.R. was told about Franks's sexual encounters with her friends.

Based on this conduct, Franks was charged with four counts of felony violation of an OFP, Minn.Stat. § 518B.01, subd. 14(d)(1) (2002), and one count of engaging in a pattern of harassing con-

duct, Minn.Stat. § 609.749, subd. 5(a) (2002). Following a bench trial in September 2005, the district court found Franks guilty on all counts. The district court imposed permissive consecutive sentences for the four counts of violation of an OFP for a total term of imprisonment of 51 months and 3 days. The district court declined to impose a sentence for the conviction of pattern of harassing conduct. This appeal followed.

## ISSUES

I. Is there sufficient evidence in the record to support Franks's conviction of engaging in a pattern of harassing conduct?

II. Did the district court err by imposing sentences for the OFP violations rather than the pattern-of-harassing-conduct conviction?

III. Did the district court properly impose permissive consecutive sentences for each conviction of violation of an OFP?

## ANALYSIS

### I.

Franks argues that the evidence is insufficient to support his conviction of engaging in a pattern of harassing conduct, Minn.Stat. § 609.749, subd. 5(a) (2002). When reviewing a challenge to the sufficiency of the evidence, we conduct a painstaking analysis of the record to determine whether the fact-finder could reasonably find the defendant guilty of the offense based on the facts in the record and the legitimate inferences that can be drawn from those facts. *State v. Chambers*, 589 N.W.2d 466, 477 (Minn.1999). In doing so, we view the evidence in the light most favorable to the verdict and assume that the fact-finder believed the evidence supporting the verdict and disbelieved any contrary evidence. *Id.* We will not disturb

a guilty verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

To sustain Franks's conviction of engaging in a pattern of harassing conduct, there must be sufficient evidence supporting each of the following elements of the offense: (1) the defendant committed two or more designated predicate offenses, such as violation of an OFP; (2) the defendant knew or had reason to know that this conduct would cause the particular victim to feel terrorized or to fear bodily harm under the circumstances; and (3) the conduct caused the victim to feel terrorized or fear bodily harm. *See* Minn.Stat. § 609.749, subd. 5(a); *State v. Richardson*, 633 N.W.2d 879, 887 (Minn.App.2001) (requiring "proof beyond a reasonable doubt of all elements of the pattern [of] harassment statute"). Franks concedes the first element. But he challenges the sufficiency of the evidence to support the district court's finding of proof beyond a reasonable doubt on the last two elements.

Section 609.749, subdivision 5(a), requires proof that Franks knew or had reason to know that his conduct "would cause [J.R.] under the circumstances to feel terrorized or to fear bodily harm." Because section 609.749, subdivision 5, does not require specific intent, it is sufficient for the victim's fear to be reasonably foreseeable. *See State v. Mullen*, 577 N.W.2d 505, 510 (Minn.1998) (stating that statute requires only general intent). Because a couple's relationship history bears heavily on what the defendant may know or have reason to know about the victim's likely response to the defendant's conduct, the district court was required to examine the nature of the relationship between Franks and J.R. to determine whether Franks knew or had reason to know that his conduct would cause J.R. "under the circumstances to feel terrorized or to fear bodily harm."

The district court found that, "in light of their relationship, [Franks] knew or had good reason to know that [J.R.] would feel terrorized as a result of [Franks's] conduct, notwithstanding [Franks's] incarceration." Franks's history of violence against J.R. and his demonstrated disregard for criminal consequences provide the necessary context for evaluating this element of the offense. Indeed, it is the relationship history between Franks and J.R. that informs J.R.'s response to Franks's letters and is probative of Franks's ability to anticipate J.R.'s likely response.

The record contains an abundance of evidence in support of the district court's finding regarding the second element. Franks had a history of terrorizing J.R. Shortly after J.R. terminated their relationship, Franks threatened to kill J.R. while dragging her around the house as he searched for a shotgun. At trial, Franks admitted threatening J.R. by saying, "If I can't have you, no one can." Franks also admitted that J.R.'s fear of harm was well-founded on that occasion and that he knew J.R. obtained an OFP shortly after this incident.

Later that same month, despite being aware of the OFP, Franks pried open J.R.'s basement window in the middle of the night, entered the house, and sexually assaulted her. Franks testified that, when J.R. told him that his actions would constitute "rape," "I told her I didn't give a f—— on that because I was going to prison anyway for the incident three weeks prior.... I told her I'd beat her a—if she didn't have sex with me...." Franks's conduct and statements demonstrate his

disregard for J.R. as well as for the criminal consequences of his actions.

J.R. filed for an extension of the OFP in January 2004, notwithstanding Franks's incarceration, because she remained "very scared of him." And the evidence establishes that Franks, who had received a copy of the extended OFP that maintained the terms of the original OFP until February 2005, also knew from other sources that J.R. wanted to avoid all contact with him and to prevent Franks from knowing anything about her life.

Franks's letters, several of which violated the OFP and formed the basis of the four predicate offenses, also evince his awareness that J.R.'s fear persisted and motivated J.R. to prevent him from learning about her personal life. Undeterred, Franks made several personal comments and inquiries to J.R. and those close to her. For example, in a letter to J.R.'s friend, Franks asked for details about J.R.'s boyfriend and made numerous sexually explicit comments. The disturbing nature of these comments is particularly relevant to establish Franks's knowledge of the effect on J.R. because Franks wrote the sexually explicit letters while in prison for sexually assaulting J.R. This evidence lends additional support to the district court's finding that Franks knew or should have known that J.R. would feel threatened by correspondence of this nature.

When viewed in the light most favorable to the guilty verdict, the record amply demonstrates that, when Franks continued to contact J.R. both directly and indirectly without regard for the criminal consequences of his actions, he was aware that she feared him and desired to avoid any contact with him. Consequently, the evidence is more than sufficient to support the district court's finding that, "in light of the history of their relationship," Franks knew or "had good reason to know" that J.R. would feel terrorized by his actions.

■ Franks also argues that there is insufficient evidence to support a determination that J.R. actually felt terrorized or feared bodily harm.[1] We disagree. J.R.'s testimony regarding her fear, along with the testimony of the police officer who interviewed J.R. regarding the OFP violations, supports this element of the offense. Moreover, J.R.'s extension of the OFP in February 2004 when Franks was incarcerated is probative of the terror that contact from Franks caused.

While we acknowledge that the evidence that J.R. felt terrorized or feared bodily harm is not as robust as the evidence supporting the first two elements, we nevertheless conclude that there is more than sufficient evidentiary support for the guilty verdict.

## II.

■ Franks next argues that the district court erred in imposing sentences on the four counts of violating an OFP rather than the single count of engaging in a pattern of harassing conduct, which is predicated on the OFP violations. The district court's interpretation of a sentencing statute presents a question of law, which we review de novo. *State v. Holmes*, 719 N.W.2d 904, 907 (Minn.2006). But the district court's decision as to which offense is the most serious for purposes of sentencing rests within the district court's discretion and will remain undisturbed absent an abuse of discretion. *State v. Alt,*

---

1. The district court did not expressly find that J.R. was terrorized or feared bodily harm. But following a bench trial, when a district court omits a finding on any issue of fact essential to sustain the general finding of guilt, it "shall be deemed to have made a finding consistent with the general finding." Minn. R.Crim. P. 26.01, subd. 2.

529 N.W.2d 727, 731 (Minn.App.1995), *review denied* (Minn. July 20, 1995).

"[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn.Stat. § 609.035, subd. 1 (2002). Therefore, Franks could not be sentenced on the four counts of violating an OFP and the single count of engaging in a pattern of harassing conduct. Neither party disputes the applicability of section 609.035. But Franks contends that, because engaging in a pattern of harassing conduct is the more-serious offense, the district court was required to impose a sentence based on that conviction.

In *State v. Kebaso*, the Minnesota Supreme Court observed that "section 609.035 contemplates that a defendant will be punished for the most serious of the offenses arising out of a single behavioral incident because imposing up to the maximum punishment for the most serious offense will include punishment for all offenses." 713 N.W.2d 317, 322 (Minn.2006) (quotation omitted). And although the supreme court has "never explicitly outlined how appellate courts should determine which of multiple offenses is the most serious under section 609.035," it has addressed the importance of the severity level set forth in the sentencing guidelines and the maximum potential sentence. *Id.* Moreover, as a general matter, the district court is expected to "sentence the conviction that carries the highest penalty." *State v. Skipintheday*, 704 N.W.2d 177, 182 (Minn.App.2005), *aff'd*, 717 N.W.2d 423 (Minn.2006).

Here, the district court's choice between sentencing Franks on the four offenses of violation of an OFP or the one offense of engaging in a pattern of harassing conduct does not fit neatly into the law governing the district court's selection of the offenses to be sentenced. Section 609.035 authorizes punishing an individual for "only one of the offenses" arising from that individual's conduct. Minn.Stat. § 609.035, subd. 1.[2] But it does not address circumstances when one conviction is for an offense that requires a *course* of criminal conduct and the other convictions constitute that course of conduct as predicate or lesser included, offenses that may be sentenced consecutively. Thus, the issue presented here requires us to determine whether the multiple OFP violations, as predicate offenses to the pattern-of-harassing-conduct conviction, may be considered collectively when compared with the conviction for engaging in a pattern of harassing conduct for the purpose of applying section 609.035. In doing so, we must reconcile the dual goals of section 609.035—penalizing the severity of the offense conduct and avoiding multiple punishments for the same offense.

We conclude that, when section 609.035 requires a district court to choose between consecutively sentencing multiple convictions for the less-severe predicate offense and a single conviction for a more-severe offense that includes the less-severe predicate offenses, the district court's decision to consecutively sentence the less-severe predicate offenses should be afforded the customary deference. *See Alt*, 529 N.W.2d at 731 (emphasizing district court's discretion in choosing which offense is most serious). This is particularly so when, as here, the sentencing guidelines permit the col-

2. For example, in *Alt*, when analyzing which "conviction" should be the basis for the sentence, we observed that section 609.035 protects a defendant by permitting the district court to impose only "a single sentence."

529 N.W.2d at 731; *see also State v. Brown*, 597 N.W.2d 299, 305 (Minn.App.1999) (stating that section 609.035 "limits punishment to a single sentence"), *review denied* (Minn. Sept. 14, 1999).

lective punishment for the predicate offenses to result in a longer aggregate sentence that more accurately represents the criminality of the defendant's conduct.

"The purpose of section 609.035 is to ensure[ ] that punishment is commensurate with the crime committed." *Kebaso*, 713 N.W.2d at 322 (alteration in original) (quotation omitted). When applied to the instant facts, section 609.035 precludes the imposition of sentences on the OFP violations *and* the offense of engaging in a pattern of harassing conduct. But it does not proscribe imposing a sentence on each of the four OFP violations because they are distinct incidents. Minn.Stat. § 609.035, subd. 1. Furthermore, an "appellate court will not interfere with a [district] court's discretion in sentencing unless the sentence is disproportionate to the offense." *State v. Hough*, 585 N.W.2d 393, 397 (Minn.1998). Thus, when section 609.035 prevents the district court from imposing a sentence on both a set of predicate offenses and the offense which is factually and legally dependent on the predicates, it is within the discretion of the district court to conclude that sentences imposed on the predicate offenses, which in aggregate are more severe than that imposed on the single offense, best reflect the criminality of the defendant's conduct.

The district court properly considered Franks's OFP violations collectively to determine that they were the most serious. Since multiple OFP violations were required here to establish the predicate offenses for the offense of engaging in a pattern of harassing conduct, those convictions are logically parallel to the pattern-of-harassing-conduct conviction. Although engaging in a pattern of harassing conduct

can be established by showing only two predicate offenses in a five year period, Minn.Stat. § 609.749, subd. 5(b), Franks committed at least four such offenses within a period of only five months. Thus, the four OFP violations collectively are more representative of the criminality of Franks's conduct. And the district court's imposition of a 51–month sentence for four OFP violations, rather than a 23–month sentence to which it would have been limited for the single offense of engaging in a pattern of harassing conduct, demonstrates the appropriateness of the sentence for the offense conduct. *See Kebaso*, 713 N.W.2d at 322 (endorsing selection of longest sentence actually imposed when vacating sentences under section 609.035).[3] Because the district court's sentencing decision comports with section 609.035 by punishing the most serious course of conduct, the district court did not abuse its broad discretion.

### III.

 Franks also challenges the district court's imposition of permissive consecutive sentences for his convictions of the OFP violations, arguing that the OFP violations are not crimes against a person under Minn. Sent. Guidelines II.F.2 (2003). He also maintains that the imposition of permissive consecutive sentences unfairly exaggerates the criminality of his conduct.

 Construction of a provision of the sentencing guidelines presents a question of law, which we review de novo. *State v. Zeimet*, 696 N.W.2d 791, 793 (Minn.2005). Although we independently review whether an offense is a crime against a person for the purpose of imposing permissive consecutive sentences, *id.*,

---

**3.** The district court imposed permissive consecutive sentences for the OFP violations. That these offenses fall within the limited category of crimes that qualify for such permissive consecutive sentencing lends additional support to the district court's assessment of the appropriate sentence for the severity of the criminal conduct.

we will not disturb a district court's imposition of permissive consecutive sentences for an offense properly deemed a crime against a person absent an abuse of discretion, *State v. McLaughlin,* 725 N.W.2d 703, 715 (Minn.2007).

Minnesota Sentencing Guidelines II.F. provides that, when an offender is convicted of multiple current offenses, concurrent sentencing ordinarily is presumptive. But consecutive sentences may be imposed permissively without a departure when there are "[m]ultiple current felony convictions for crimes against persons." Minn. Sent. Guidelines II.F.2. This rule applies when, as here, the presumptive disposition for the offenses is commitment to the commissioner of corrections. Minn. Sent. Guidelines II.F. Comment II.F.04 clarifies that permissive consecutive sentences may be imposed "even when the offenses involve a single victim involving a single course of conduct." Consequently, if violation of an OFP is a "crime against a person," it is within the discretion of the district court to impose consecutive sentences for multiple convictions of this offense.

When Franks committed the offenses at issue here, the sentencing guidelines did not designate which offenses were crimes against a person. By the date of his sentencing hearing, however, the sentencing guidelines had been amended to include a list of offenses eligible for permissive consecutive sentences. Minn. Sent. Guidelines VI (Supp.2005). Both violation of an OFP and engaging in a pattern of harassing conduct were designated as crimes against a person. *Id.* Because the sentencing guidelines in effect when the offense is committed govern, *State v. Goldenstein,* 505 N.W.2d 332, 348 (Minn.App. 1993), *review denied* (Minn. Oct. 19, 1993), the district court correctly declined to rely on the amended guidelines. Rather, the district court made an independent determination that violation of an OFP is a crime against a person.

■ Without the benefit of the designation set forth in the Minnesota Sentencing Guidelines, our inquiry looks beyond the crime's classification to the underlying offense conduct to ascertain whether the crime, as committed, is a crime against a person. *State v. Myers,* 627 N.W.2d 58, 62–63 (Minn.2001). A crime against a person need not be an act of physical violence. *State v. Rannow,* 703 N.W.2d 575, 578 (Minn.App.2005). A crime that inflicts emotional torment or harm on another may qualify as a crime against a person, especially when a perpetrator knowingly causes another fear by disregarding court-ordered protections sought by the victim to keep that perpetrator away. *See id.* (finding that violation of restraining order is a crime against person).

In *Rannow,* the defendant pleaded guilty to five felony violations of a restraining order based on his repeated calls to a former co-worker. *Id.* On appeal, he argued that the district court abused its discretion by imposing consecutive sentences for each conviction based on the district court's determination that violation of a restraining order is a crime against a person, thereby qualifying for permissive consecutive sentencing. *Id.* at 577. In affirming the consecutive sentences, we observed that, because the defendant also had harassed the former co-worker over an extended period, the defendant's conduct "posed a threat to another person, and, therefore, each restraining-order violation constitutes a crime against a person." *See id.* at 578. The subsequent designation of violation of an OFP and restraining order as a crime against a person supports this conclusion.

Franks's OFP violations are precisely the type of emotional harm referred to in

*Rannow.* After Franks threatened J.R.'s life, dragged her around the house in search of a shotgun, and violated the first OFP by breaking into her home and sexually assaulting her, J.R. secured an extended OFP against Franks, notwithstanding his imprisonment. Franks ignored the OFP and subjected J.R. to frequent letters, repeated references to the sexual assault, attempts to exploit her vulnerable financial situation, and belittlement of her toward their children. On this record, the district court correctly determined that Franks's OFP violations are crimes against a person and, as such, may support permissive consecutive sentences under Minnesota Sentencing Guidelines II.F.2.

Finally, Franks argues that the district court erred in imposing permissive consecutive sentences because such a disposition unfairly exaggerates the criminality of his conduct. We will not reverse a district court's imposition of permissive consecutive sentences for offenses properly deemed crimes against a person absent an abuse of discretion. *McLaughlin,* 725 N.W.2d at 715; *see also State v. Norris,* 428 N.W.2d 61, 70–71 (Minn.1988) (reviewing for unfair exaggeration of criminality of defendant's conduct).

Franks's sentence is not a departure from the sentencing guidelines, which presumptively suggests that it does not unfairly exaggerate the criminality of his conduct. Moreover, as discussed above, the district court carefully considered the nature of the offenses, properly determined Franks's four violation-of-an-OFP convictions to be crimes against a person, and found that presumptive consecutive sentencing on the four predicate offenses better reflects the appropriate penalty for Franks's crimes than a single sentence on the offense of engaging in a pattern of harassing conduct. This aspect of the district court's sentencing decision falls within its broad discretion. And in light of the record and the district court's careful consideration, we conclude that the sentences imposed do not unfairly exaggerate the criminality of Franks's conduct. Rather, they represent a sound exercise of the district court's discretion.

## DECISION

The evidence is sufficient to support appellant's conviction of engaging in a pattern of harassing conduct. The district court did not abuse its discretion in sentencing appellant for the four offenses of violation of an OFP rather than the single offense of engaging in a pattern of harassing conduct. The district court's imposition of permissive consecutive sentences of 51 months' imprisonment based on its correct determination that violation of an OFP is a crime against a person was not an abuse of discretion.

**Affirmed.**