**STATE of Minnesota, Respondent,**

v.

**Michael James GARTLAND, Appellant.**

**No. C5–82–1486.**

Supreme Court of Minnesota.

March 18, 1983.

John E. Daubney Law Office, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, County Atty., and Steven

C. DeCoster, Asst. County Atty., St. Paul, for respondent.

AMDAHL, Chief Justice.

This is an appeal from sentences imposed in district court for the deaths of two people resulting from defendant's criminal negligence in driving his automobile. The issues are (1) whether multiple sentencing, using the so-called *Hernandez* method of computing a defendant's criminal history score, was barred by Minn.Stat. § 609.035 (1982), and (2) whether the record fails to support the trial court's dispositional departure in the form of execution of a presumptively stayed sentence. We affirm.

Defendant, who is 27 years old, has a history of drug and alcohol abuse. He claims that he had resolved in January 1982 to stop drinking and was trying to accomplish this on his own.

Around 1:30 a.m. on Sunday, March 28, 1982, he picked up his girlfriend at the restaurant where she worked. They then returned to their apartment on Grand Avenue in St. Paul, where they held a "kegger" party. Defendant denied drinking during the party but admitted that he had "several" beers from the keg after the party was over because he was upset as a result of an argument he had with his girlfriend. Asked by the officer who prepared the presentence investigation report what he meant by "several," defendant apparently replied 8 or 9.

Around 10:45 a.m. without having had any sleep, defendant got in his 1973 Cadillac and drove to a fast-food restaurant for breakfast. On his way back to the apartment he fell asleep and his car collided with a light pole on Grand (formerly Oakland) Hill.

Hoping to avoid apprehension by police, defendant, who knew the area well, drove off at a high rate of speed westbound on Lincoln, a less-traveled residential street that is open only to one-way traffic in an easterly direction at that point. West of Dale the street becomes a two-way street. At Avon, which is west of Dale and 4 to 5 blocks west of where defendant collided with the light pole, a 41-year-old woman and her 7-year-old daughter, riding in a Honda automobile, entered the intersection. Defendant saw the car and applied his brakes but was unable to avoid a collision. His car rammed into the midsection of the Honda, killing the occupants and pushing the car approximately 50 yards west of Avon on Lincoln until it hit a parked car.

Defendant would later admit that his car may have reached 60 miles per hour at some point and that he was driving approximately 50 miles per hour at the time of impact. One eyewitness estimated defendant's speed at 90 miles per hour. Accident reconstruction experts conservatively estimated the speed of defendant's car at impact at 57 to 67 miles per hour. The estimated speed of the victim's car was 8 miles per hour.

After the collision, defendant crawled out of the window of his car and ran home. Defendant claimed he told some people to call an ambulance, but a woman who ran outside her house right after the collision occurred testified that when she asked him if she should call the paramedics, he replied that he was going to the alley to urinate. Defendant claimed that when he got home he also asked his girlfriend to call an ambulance. He testified that he then passed out and that his girlfriend put him to bed.

Police arrested defendant a short time later. An analysis of a sample of his blood showed that he had a blood alcohol content of .12% and also showed the presence of a barbiturate, which defendant claimed was a sleeping pill he had had the previous day. On May 26 defendant entered a chemical dependency treatment program. Upon leaving that program he entered a halfway house, where he was residing at the time of sentencing.

On June 28, 1982, defendant pleaded guilty to two counts of criminal negligence resulting in death, Minn.Stat. § 609.21 (1982), an offense carrying a statutory maximum of 5 years in prison. The offense is a severity level V offense. Defendant had no prior felony or nontraffic misdemeanor convictions but did have a prior DWI conviction (in 1975). Using the *Hernandez* method of computing his criminal history score, defendant's criminal history score at the time of sentencing was zero for the one conviction and one for the other. *See* Minnesota Sentencing Guidelines and Commentary, II.B.101. (1982); *State v. Hernandez,* 311 N.W.2d 478 (Minn.1981). This meant that the presumptive sentence for the one conviction was 18 months stayed and for the other 23 months stayed. The presentence investigation report recommended imposition of the presumptive sentences. The trial court imposed concurrent sentences of 18 and 23 months but departed dispositionally, executing the sentence. This appeal followed.

■ Defendant's first contention is that the multiple sentencing was barred by Minn.Stat. § 609.035 (1982). That statute provides:

> Except as provided in section 609.585, if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts.

There are two exceptions to this statute. One is the burglary exception, provided in Minn.Stat. § 609.585 (1982). The second exception is a court-created exception providing that a defendant who commits multiple offenses in a single behavioral incident may be sentenced to one sentence per victim so long as the multiple sentencing does not unfairly exaggerate the criminality of the defendant's conduct. *State v. Marquardt,* 294 N.W.2d 849 (Minn.1980).

Defendant argues that the multiple-victim exception should not apply in this case or in any case in which the statute violated does not require a showing of intent. We disagree. The fact that defendant may not have intended to hurt anyone should not make a difference. The significant fact is that defendant intentionally drove his car at an outrageously high rate of speed in a residential area knowing that it was possible and even likely that he might injure or kill one or more innocent people. That is what happened, and we believe that the multiple-victim exception to Minn.Stat. § 609.035 (1982) covers this situation. This being so, it was appropriate to use the *Hernandez* method of computing defendant's criminal history score and the 23-month duration of his prison term for the second conviction is proper.

■ The second issue raised on appeal concerns the propriety of the trial court's dispositional departure. In most of the cases in which we have approved execution of presumptively-stayed prison terms we have relied on the defendant's particular unamenability to probation. *See, e.g., State v. Garcia,* 302 N.W.2d 643 (Minn. 1981). In this case the trial court did not rely on that but instead relied on its opinion that defendant's conduct was more serious than that usually associated with the offense in question.

We agree with the trial court that this was not the usual or typical case of death by criminal negligence and that defendant's conduct was aggravated in the extreme. *See State v. McClay,* 310 N.W.2d 683 (Minn. 1981). Accordingly, the dispositional departure, in the form of execution of a presumptively stayed sentence, was justified. Minnesota Sentencing Guidelines and Commentary, II.D.01. (1982).

Affirmed.