**STATE of Minnesota, Appellant,**

v.

**Michael James FERGUSON,
Respondent.**

No. A10–0540.

Supreme Court of Minnesota.

Jan. 11, 2012.

Rehearing Denied Feb. 10, 2012.

Lori Swanson, Attorney General, St. Paul, Minnesota; and John J. Choi, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, Minnesota, for appellant.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, St. Paul, Minnesota, for respondent.

## OPINION

MEYER, Justice.

Michael James Ferguson was convicted of one count of felony drive-by shooting at an occupied building, Minn.Stat. § 609.66, subd. 1e(b) (2010), and eight counts of second-degree assault, Minn.Stat. § 609.222, subd. 1 (2010), arising out of an incident in which multiple shots were fired at a duplex occupied by eight people. After Ferguson successfully appealed his original sentence, the district court imposed sentence on the drive-by shooting conviction and on all eight assault convictions. On appeal, the court of appeals held that Minn.Stat. § 609.035 (2010) required the district court to sentence Ferguson only on the drive-by shooting at an occupied building conviction and remanded for resentencing on that conviction. We conclude that the court of appeals misapplied the rule that a district court may not sentence a defendant to more than one crime for each victim, and that a single sentence for drive-by shooting at an occupied building is not commensurate with Ferguson's culpability for using a dangerous weapon to intentionally cause eight persons to fear immediate bodily harm. We therefore reverse the decision of the court of appeals and uphold the sentence imposed by the district court.

On September 27, 2007, Michael James Ferguson and his brothers Marcus Dillard and Matthew Dillard went to a house in St. Paul to talk with someone about a dog Marcus had purchased. When the brothers knocked on the door, someone on the second floor yelled at them to leave. The brothers then got into a van; Matthew drove with Marcus in a rear passenger seat and Ferguson in the front passenger seat. Matthew initially drove the van away from the house, but then turned around. As the van passed by the house, Ferguson handed a gun to Marcus, who fired approximately six rounds at the house. Eight people were inside the house, but no one was injured.

Ferguson was charged with one count of drive-by shooting at an occupied building, Minn.Stat. § 609.66, subd. 1e(b), and eight counts of second-degree assault, Minn. Stat. § 609.222, subd. 1, each by aiding and abetting, Minn.Stat. § 609.05, subd. 1 (2010). A jury found Ferguson guilty as charged. After convicting Ferguson on all nine counts, the district court sentenced Ferguson on the eight assault convictions, imposing one 36–month sentence, a second 36–month sentence to be served consecutively with the first sentence, and six 39–month sentences to be served concurrently with the first sentence. The district court did not sentence Ferguson on the drive-by shooting conviction because it found that the drive-by shooting was part of a continuing course of conduct with the assaults.

Ferguson appealed his convictions and sentence. The court of appeals affirmed the convictions, concluding that there was sufficient evidence to prove that Marcus had committed eight counts of second-degree assault and that Ferguson had intentionally aided Marcus in all eight assaults. *State v. Ferguson (Ferguson I )*, No. A08–1327, 2009 WL 3172139, at *2–4, 6 (Minn. App. Oct. 6, 2009). But the court of appeals reversed and remanded for resentencing, concluding that *State v. Franks,* 765 N.W.2d 68 (Minn.2009), required the district court to sentence Ferguson on the drive-by shooting conviction, which was the most serious of the offenses. *Ferguson I,* 2009 WL 3172139, at *5. The court stated that Ferguson's new sentence could not exceed his original aggregate sentence of 75 months. *Id.* (citing *State v. Jackson,* 749 N.W.2d 353, 358 (Minn.2008)).

On remand, Ferguson asked the district court to impose sentence only on the drive-by shooting conviction and to set the sentence at 50 months, which was the minimum non-departing sentence for an offense with severity level VIII and a criminal history score of one. *See* Minn. Sent. Guidelines IV. Over Ferguson's objection, the district court sentenced Ferguson to 39 months on the drive-by shooting conviction, 36 months on the first assault conviction, to be served consecutively with the drive-by shooting charge, and 39 months on each of the remaining seven assault convictions, to be served concurrently, for an aggregate sentence of 75 months. The district court explained that the downward departure on the drive-by shooting conviction was not based on any mitigating factors but was granted so that nine sentences could be imposed without exceeding Ferguson's initial sentence. The district court could have sentenced Ferguson to as many as 69 months on the drive-by shooting conviction without departing from the guidelines. *See* Minn. Sent. Guidelines IV.

Ferguson appealed his revised sentence. The court of appeals held in a published decision that the district court could only sentence Ferguson on the drive-by shooting conviction. *State v. Ferguson (Ferguson II )*, 786 N.W.2d 640, 645 (Minn.App. 2010). The court vacated Ferguson's sentences on his assault convictions and remanded for Ferguson to be resentenced on the drive-by shooting conviction to a sentence of not more than 75 months. *Id.* We granted review.

I.

■ Minnesota Statutes § 609.035 generally "prohibits multiple sentences, even concurrent sentences, for two or more offenses that were committed as part of a single behavioral incident." *State v. Norregaard,* 384 N.W.2d 449, 449 (Minn. 1986). The purpose of section 609.035 is "to protect against exaggerating the criminality of a person's conduct and to make both punishment and prosecution commensurate with culpability." *State ex rel. Stangvik v. Tahash,* 281 Minn. 353, 360, 161 N.W.2d 667, 672 (1968). Section 609.035 "contemplates that a defendant will be punished for the 'most serious' of the offenses arising out of a single behavioral incident because 'imposing up to the maximum punishment for the most serious offense will include punishment for all offenses.'" *State v. Kebaso,* 713 N.W.2d 317, 322 (Minn.2006) (quoting *State v. Johnson,* 273 Minn. 394, 399, 141 N.W.2d 517, 522 (1966)); *State v. Franks,* 765 N.W.2d 68, 77 (Minn.2009) (same). But the legislature did not intend section 609.035 to immunize offenders in every case from "the consequences of separate crimes intentionally committed in a single episode against more than one individual." *State ex rel. Stangvik,* 281 Minn. at 360, 161 N.W.2d at 672. We have therefore "carved out an exception to [section

609.035] when multiple victims are involved." *State v. Whittaker,* 568 N.W.2d 440, 453 (Minn.1997).

 Under the multiple-victim exception, "courts are not prevented from giving a defendant multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Skipintheday,* 717 N.W.2d 423, 426 (Minn.2006). " '[T]he purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability and a defendant who commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' " *State ex rel. Stangvik,* 281 Minn. at 361, 161 N.W.2d at 672 (quoting *People v. Ridley,* 63 Cal.2d 671, 47 Cal.Rptr. 796, 408 P.2d 124, 128 (1965)). "In other words, we determined that multiple convictions arising from a single behavioral incident did not violate our rule against double punishment because where multiple victims are involved, a defendant is equally culpable to each victim." *State v. Edwards,* 774 N.W.2d 596, 605 (Minn.2009). But a defendant "may not be sentenced for more than one crime for each victim" when the defendant's conduct is motivated by a single criminal objective. *State v. Prudhomme,* 303 Minn. 376, 379, 228 N.W.2d 243, 245 (1975).

Here, the court of appeals concluded that the single count of drive-by shooting at an occupied building was the most serious offense committed against each of the eight victims. *Ferguson II,* 786 N.W.2d at 645. Based on this conclusion, the court held that Minn.Stat. § 609.035 prohibited the district court from imposing the seven additional second-degree assault sentences because "a defendant convicted of offenses arising out of a single behavioral incident and committed against multiple victims may be sentenced only on the most serious offense against each victim." *Id.* The court of appeals effectively held that, under the facts of this case, the rule in question—a district court may not sentence a defendant to more than one crime for each victim—required the district court to impose one sentence, despite the fact that Ferguson's conduct victimized eight people. Because the court of appeals misapplied the multiple-victim rule and because a single sentence for drive-by shooting at an occupied building is not commensurate with Ferguson's culpability for using a dangerous weapon to intentionally cause eight persons to fear immediate bodily harm, we reverse.

## II.

 Whether an offense is subject to multiple sentences under Minn.Stat. § 609.035 is a question of law, which we review de novo. *Skipintheday,* 717 N.W.2d at 426. We conclude that, for purposes of the rule that a district court may not sentence a defendant for more than one crime for each victim, a single count of drive-by shooting at an occupied building does not constitute a crime against each building occupant.[1] We reach this conclusion based on the following considerations.

1. We limit this conclusion to the offense of drive-by shooting at an occupied building, and express no opinion about who could be victims of a drive-by shooting at a person or an occupied vehicle. We do not reach the question of whether an occupant of a building at which shots were fired in a drive-by shooting could also be the victim of a drive-by shooting at a person.

■ First, the elements of drive-by shooting at an occupied building require only a reckless discharge of a firearm "at or toward" an occupied building.[2] Minn. Stat. § 609.66, subd. 1e (stating that "[w]hoever, while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward . . . an occupied building" is guilty of a felony); *State v. Cruz–Ramirez*, 771 N.W.2d 497, 507–08 n. 3 (Minn.2009) (noting that "the elements of drive-by shooting . . . require only the reckless discharge of a firearm"). The defendant does not have to know that a building was occupied to be convicted under section 609.66, subdivision 1e(b). Just as entry into a single building occupied by three persons does not support three separate burglary convictions, *see State v. Hodges*, 386 N.W.2d 709, 711 (Minn.1986), a reckless discharge of a firearm at a single building occupied by eight people does not support eight separate drive-by shooting at an occupied building convictions.[3]

Second, although a drive-by shooting at an occupied building implies that people were in the building, nothing in the language of the statute refers to the effect of a shooting on the occupants of the build-

ing. Unlike the crime of assault, the drive-by shooting statute does not require that the occupants of the building be injured, put in fear, or even be aware of the shooting. *See* Minn.Stat. § 609.66, subd. 1e (2010).

The dissent asserts that our decision is inconsistent with *State v. Rieck*, 286 N.W.2d 724 (Minn.1979). We perceive no inconsistency. The defendant in *Rieck* had firebombed a house in an attempt to prevent an individual who he mistakenly thought was in the house from testifying against the defendant's half brother. *Id.* at 725. We held that the defendant could be convicted of one count of tampering for the intended victim in addition to five counts of assault—one for each occupant of the house—even though the person he was attempting to silence was not in the house. *Id.* at 726–27. The dissent claims that *Rieck* indicates that the effect of a crime on its purported victims is irrelevant to whether the crime is a victimless crime. But the tampering statute incorporates attempt: whoever "intentionally prevents or dissuades or intentionally *attempts to prevent or dissuade* by means of force or threats of injury . . . a person who is or

---

**2.** The dissent cites *State v. Gartland*, 330 N.W.2d 881 (Minn.1983), as "refut[ing] the contention that lack of intent to kill or injure renders a crime victimless." *Gartland* does not stand for the proposition that intent is irrelevant to whether a crime has victims. The defendant in *Gartland* was charged with two counts of criminal negligence resulting in death, Minn.Stat. § 609.21 (1982) (since amended to criminal vehicular homicide, Minn.Stat. § 609.21 (2010)), an offense which obviously has a victim. *See id.* at 883. The defendant argued that the multiple-victim exception should never apply "in any case in which the statute violated does not require a showing of intent." *Id.* We rejected that contention, holding that "[t]he fact that defendant may not have intended to hurt anyone should not make a difference" as to whether that defendant could be sentenced once per

victim. *Id.* We did not address in that case whether a defendant's intent was *relevant* to whether the underlying crime had victims—only whether lack of intent *precluded* application of the multiple-victim exception.

**3.** In *Hodges*, 386 N.W.2d at 711, we stated that "the multiple-victim exception clearly permits three assault convictions if a burglar assaults three different people after entering a house." The same holds true when the person, who recklessly discharges a firearm at an occupied building, assaults eight different building occupants by committing the act with an intent to cause fear of immediate harm. *See* Minn.Stat. § 609.02, subd. 10 (2010) (defining "assault" as "an act done with intent to cause fear in another of immediate bodily harm or death").

may become a witness." Minn.Stat. § 609.498, subd. 1(a) (2010) (emphasis added). Thus, *Rieck* merely reflects the long-standing rule that one may attempt a crime to which the intended victim is oblivious. The crime that is attempted has an obvious effect on the intended victim.

In sum, for purposes of the rule that a district court may not sentence a defendant for more than one crime for each victim, a single count of drive-by shooting at an occupied building does not constitute a crime against each building occupant. Consequently, the court of appeals erred when it concluded that Minn.Stat. § 609.035 prohibited the district court from imposing the eight additional second-degree assault sentences.

### III.

■ Even if the single count of drive-by shooting at an occupied building were the most serious offense committed against each victim, the district court properly sentenced Ferguson because a single sentence for drive-by shooting at an occupied building is not commensurate with Ferguson's culpability for using a dangerous weapon to intentionally cause eight persons to fear immediate bodily harm. As discussed above, the purpose of Minn.Stat. § 609.035 is to protect against exaggerating the criminality of a person's conduct and to make both punishment and prosecution commensurate with culpability. *State ex rel. Stangvik*, 281 Minn. at 360, 161

N.W.2d at 672. Although a sentence for the most serious offense ordinarily includes punishment for all offenses, *see Kebaso*, 713 N.W.2d at 322, that principle does not hold true in this case. The State charged one count of the most serious offense—drive-by shooting at an occupied building. But a sentence for that single offense is not commensurate with Ferguson's criminal liability because it fails to reflect Ferguson's increased culpability for committing an act of violence with the intent to harm more than one person.[4] We therefore reverse the decision of the court of appeals and uphold the sentence imposed by the district court.[5]

Reversed.

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent. I disagree with the majority's conclusion that a drive-by shooting at an occupied building is a victimless crime; rather, I conclude that all of the occupants of the targeted building are victims. Moreover, even if the majority is correct that the building's occupants were not victims, I disagree with the majority's assumption that the multiple-victim exception applies to a victimless crime. It does not. Therefore, I would affirm the result reached by the court of appeals.

Michael James Ferguson was convicted on one count of aiding and abetting felony drive-by shooting at an occupied building and eight counts of aiding and abetting

---

4. The dissent misconstrues our analysis as a discussion of the second prong of the multiple victim exception. That prong provides a cap on multiple sentences and reflects the principle that a defendant's sentence should not unfairly exaggerate the criminality of his or her conduct. *State v. Marquardt*, 294 N.W.2d 849, 851 (Minn.1980). Our analysis considers the separate and distinct situation in which a sentence on the most serious offense unfairly depreciates the criminality of the defendant's conduct. In such a situation, we

conclude the rule announced in *Kebaso*, 713 N.W.2d at 322, does not apply.

5. Because we reverse the decision of the court of appeals and uphold the sentence imposed by the district court, we do not reach Ferguson's argument that the State may not challenge the length of his 39–month sentence on drive-by shooting because no remand is necessary.

second-degree assault. The convictions are the result of an incident in which Ferguson handed a gun to his half-brother, who then fired several shots at a duplex occupied by eight people, six of whom were children. The district court first sentenced Ferguson to two consecutive sentences—for the drive-by shooting conviction and for one of the second-degree assault convictions. The court then imposed seven concurrent sentences for the remaining seven second-degree assault convictions. The court of appeals reversed the district court's sentencing decisions, concluding that Ferguson could only be sentenced for the more serious conviction—drive-by shooting. *State v. Ferguson*, 786 N.W.2d 640, 645 (Minn.App.2010).

Minnesota law provides that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn.Stat. § 609.035 (2010). We have said that the purpose of Minn.Stat. § 609.035 is "to limit punishment to a single sentence where a single behavioral incident result[s] in the violation of more than one criminal statute." *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn.1995) (citing Minn.Stat. § 609.035, advisory comm. cmt.). We have also said that "if a defendant commits multiple offenses against the same victim during a single behavioral incident, Minn.Stat. § 609.035 provides that the defendant may be sentenced for only one of those offenses." *Id.; see also State v. Holmes*, 778 N.W.2d 336, 339 (Minn.2010); *State v. Herberg*, 324 N.W.2d 346, 348 (Minn.1982); *State v. Zuehlke*, 320 N.W.2d 79, 81–82 (Minn.1982). In essence, section 609.035 prohibits the imposition of multiple sentences for multiple crimes committed during a single behavioral incident. Thus, unless some exception applies, a district court may only sentence a defendant for the most serious offense committed during the single behavioral incident even though imposing several consecutive sentences for less serious offenses would result in a longer total sentence. *See State v. Franks*, 765 N.W.2d 68, 78 (Minn.2009).

It is undisputed that Ferguson's crimes of aiding and abetting a drive-by shooting and aiding and abetting eight counts of second-degree assault occurred during a single behavioral incident. There is no question that Ferguson committed nine separate crimes during this one behavioral incident. It is also undisputed that a drive-by shooting at an occupied building is a more serious offense than second-degree assault. Drive-by shooting at an occupied building has a severity level of VIII and a maximum punishment of ten years in prison. Minn. Sent. Guidelines V; Minn.Stat. § 609.66, subd. 1e(b) (2010). Second-degree assault has a severity level of VI and a maximum punishment of seven years in prison.[1] Minn. Sent. Guidelines V; Minn.Stat. § 609.222, subd. 1. Unless an exception to Minn.Stat. § 609.035 applies, Ferguson may not be sentenced on more than the most serious offense for which he was convicted. Therefore, we must determine if there is an exception that allowed the district court to impose the multiple sentences.

The parties agree that the issue here involves a judicially created exception to Minn.Stat. § 609.035—the multiple-victim exception. We have held that courts are not prevented from giving a defendant multiple sentences for multiple crimes

---

1. If the second-degree assault charge involves "inflict[ing] substantial bodily" harm on the victim, then the maximum punishment is ten years in prison. Minn.Stat. § 609.222, subd. 2 (2010). The severity level for this type of second-degree assault is still VI. Minn. Sent. Guidelines V.

arising out of a single behavioral incident if two criteria are met: "(1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Skipintheday,* 717 N.W.2d 423, 426 (Minn.2006); *see also State v. Schmidt,* 612 N.W.2d 871, 878 (Minn.2000); *State ex rel. Stangvik v. Tahash,* 281 Minn. 353, 359–60, 161 N.W.2d 667, 672 (1968). The multiple-victim exception essentially establishes a "one sentence per victim" rule. *See Schmidt,* 612 N.W.2d at 878 ("[W]e uphold the imposition of one sentence per victim if this would not result in punishment grossly out of proportion to the defendant's culpability." (citations omitted) (internal quotation marks omitted)); *State v. Whittaker,* 568 N.W.2d 440, 453 (Minn.1997) ("[O]ne sentence may be imposed per victim in multiple-victim cases. . . .").

The majority applies the multiple-victim exception to this case. It does so by first concluding that occupants of a building are not necessarily victims of the offense of drive-by shooting at an occupied building, and instead concludes they are only victims of assault. The majority then appears to conclude that because there were eight people in the building Ferguson targeted, he may receive nine separate sentences, regardless of the offenses for which those sentences are imposed. Based on this conclusion, the majority instructs the district court that it may sentence Ferguson separately for the drive-by shooting conviction and each of the eight assault convictions.

The majority's approach to the sentencing of Ferguson is erroneous for two reasons. First, the majority's conclusion that occupants of a building are not victims of the offense of drive-by shooting at an occupied building is unsupported by Minnesota law. Second, contrary to the majority's assumption, the multiple-victim exception does not support a sentence for a victimless crime that arises from the same conduct as other sentenced crimes.

*Victimless Crime*

The majority's first conclusion—that drive-by shooting at an occupied building is a victimless crime—rests on two assertions. Each assertion—(1) the elements of drive-by shooting do not require the defendant to target any person, and (2) nothing in the language of the drive-by shooting statute refers to the effect of a shooting on the occupants of the building—lacks support in Minnesota law. I will address both assertions in turn.

Minnesota Statutes § 609.66, subd. 1e, provides that "[w]hoever, while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward . . . a person, or an occupied building or motor vehicle," is guilty of a felony. The majority concludes that the elements of the crime of drive-by shooting at an occupied building do not require the defendant to target any person; therefore, any person(s) in the occupied building cannot be a victim(s) of the drive-by shooting. But the fact that Minn.Stat. § 609.66, subd. 1e, does not expressly contemplate the shooter's intent to target persons inside the occupied building does not mean that the persons who occupy the building are not victims. In fact, our case law appears to point us in the opposite direction from that taken by the majority.

For example, in *State v. Gartland,* 330 N.W.2d 881, 883 (Minn.1983), the defendant argued that the multiple-victim exception should not apply "in any case in which the statute violated does not require a showing of intent." But we disagreed, saying that "[t]he fact that [the] defendant may not have intended to hurt anyone should not make a difference." *Id.* We concluded that the significant fact was that the defendant knew his conduct—reckless

driving in a residential neighborhood—might injure or kill others. *Id.* The defendant's recklessness—the same element the State must prove to convict a defendant of a drive-by shooting at an occupied building—justified imposition of multiple sentences because the crime in *Gartland* resulted in multiple victims. *Id.;* Minn.Stat. § 609.66, subd. 1e. By providing an example of a crime that can result in multiple victims even though a showing of intent is not required for conviction, *Gartland* refutes the contention that lack of intent to kill or injure renders a crime victimless.

Minnesota Statutes § 609.66, subd. 1e, also makes it a crime to shoot at a person or at an occupied motor vehicle. A drive-by shooting at a person, or at person occupying a motor vehicle, cannot be a victimless crime for purposes of the multiple-victim exception. In each case, the person or the occupant of the vehicle is on the receiving end of the drive-by shooting.[2] Moreover, a conclusion that a drive-by shooting at a person or an occupied motor vehicle is victimless is inconsistent with *State v. Edwards,* 774 N.W.2d 596 (Minn. 2009).

In *Edwards,* the defendant fired several shots at a group of nine people that included M.D., K.R. (1), and K.R. (2). *Edwards,* 774 N.W.2d at 599–600. Edwards was charged with one count of first-degree assault against M.D. because M.D. was hit and seriously wounded. *Id.* He was also charged with three counts of drive-by shooting, one each for M.D., K.R. (1), and K.R. (2). *Id.* Recognizing that it could impose only one sentence per victim, the district court sentenced Edwards for the first-degree assault, but not the drive-by shooting, of M.D.[3] *Id.* at 600. The court then imposed two additional sentences, one each for the drive-by shooting of K.R. (1) and K.R. (2). *Id.* We held these three sentences were permissible because Edwards was not convicted of any other charged crimes against either K.R. (1) and K.R. (2). *Id.* 606–07.

In essence, we concluded in *Edwards* that M.D., K.R. (1), and K.R. (2) were each a victim of the drive-by shooting. Because each of these three people was a victim in his own right, we allowed the district court to use the multiple-victim exception to impose one sentence for each victim of the drive-by shooting (though the court ultimately replaced the sentence related to the drive-by shooting of M.D. with a sentence for the assault of M.D., the more serious crime). *See also State v. DeFoe,* 280 N.W.2d 38, 41–42 (Minn.1979) (affirming separate sentences for aggravated assault and aggravated robbery in which only one of the several people in the bar was a victim of aggravated assault). If in *Edwards* we had used the logic articulated by today's majority, the result would have been different. We could not have allowed the district court to sentence Edwards for shooting at K.R. (1) and K.R. (2) because, under the majority's analysis, neither were victims of the drive-by shooting, despite their presence during the crime and the fact Edwards shot at them.

The majority also concludes that a drive-by shooting at an occupied building is victimless because the language of the statute does not refer to the effect of the drive-by shooting on the occupants—a conclusion closely related to the majority's first conclusion. But this second conclusion ap-

---

**2.** The majority purports to take no position on whether occupants of a motor vehicle can be victims of a drive-by shooting; but, the logical consequence of the majority's argument is that they cannot be victims.

**3.** The district court sentenced Edwards for first-degree assault, not drive-by shooting, because first-degree assault was the more serious of the two offenses. *Id.* at 600.

pears to be inconsistent with our decision in *State v. Rieck*, 286 N.W.2d 724 (Minn. 1979). In *Rieck*, the defendant was convicted of, among other offenses, one count of tampering with a witness and five counts of assault for an incident in which he firebombed a house occupied by five people. *Id.* at 727. The defendant believed a sixth occupant was present, and his firebombing was motivated by a desire to prevent the sixth person from testifying against his half-brother in another matter. *Id.* at 725. But the sixth person was not in the house. *Id.* at 727. We stated that "[a]lthough the sixth person was not present, under Minn.Stat. § 609.498 (1978) her presence was not required in order to convict [the] defendant of tampering. The purpose of the firebombing was to silence her as a witness." *Id.* at 725. We concluded that the defendant's purpose was enough to make the sixth person a victim of the crime of tampering with a witness, and we permitted six sentences, notwithstanding the fact that the sixth "victim" was unaware of the firebombing at the time it occurred. *Id.* Therefore, the mere fact that statutory language does not require an individual's awareness of a crime affecting her does not render the crime victimless.

Finally, in order to convict Ferguson, the State had to prove beyond a reasonable doubt that the targeted building was *occupied* at the time of the shooting. If the statutory framework punished shooting at occupied and unoccupied buildings equally, there might be a stronger argument that the crime was victimless. But

the statute's contemplation of the building's occupants indicates the Legislature appreciated that a drive-by shooting at an occupied building puts the occupants at risk. *Compare* Minn.Stat. § 609.66, subd. 1e(a) (imposing up to three years of imprisonment for firing at a "building"), *with* Minn.Stat. § 609.66, subd. 1e(b) (imposing up to ten years of imprisonment for firing at an "occupied building"). Thus, I conclude each occupant was a victim of the drive-by shooting.[4] Minn.Stat. § 609.66, subd. 1e(b) (2006). Each occupant was also a victim of second-degree assault. Ferguson can only be sentenced for one crime against each of these eight victims— the most serious offense. Minn.Stat. § 609.035, subd. 1.

*Multiple Victims*

Even if one were to assume that the majority is correct that a drive-by shooting at an occupied building is a victimless crime, the majority's assumption that the multiple-victim exception will support a sentence on such a victimless crime is flawed. As previously stated, it is well established that the multiple-victim exception provides that, notwithstanding Minn. Stat. § 609.035, a district court may impose one sentence per victim for multiple crimes arising out of a single behavioral incident when the crimes affect multiple victims. *See Schmidt*, 612 N.W.2d at 878 ("[W]e uphold the imposition of one sentence per victim if this would not result in punishment grossly out of proportion to the defendant's culpability." (citations omitted) (internal quotation marks omitted)).[5] In essence, we have concluded that

---

4. In fact, the State during its closing argument acknowledged that the building's occupants were "victims of the drive-by shooting." The State never argued, at trial or in its brief to this court, that the building's occupants were not victims.

5. *See also Whittaker*, 568 N.W.2d at 453 ("[T]his court stated the rule that one sentence may be imposed per victim in multiple-victim cases."); *State v. Goulette*, 442 N.W.2d 793, 795 (Minn.1989) (upholding five consecutive sentences for five victims); *State v. Williams*, 337 N.W.2d 387, 390 (Minn.1983) ("[T]he trial court may impose one sentence

the rationale for the multiple-victim exception is that "where multiple victims are involved, a defendant is equally culpable to each victim." *Edwards*, 774 N.W.2d at 605.

Applying the principle of one sentence per victim, we have declined to count those affected by victimless crimes as "victims" for purposes of the multiple-victim exception. In *State v. Skipintheday*, a defendant was convicted of three counts of being an accomplice after the fact to a three-victim shooting. 717 N.W.2d at 424. The district court applied the multiple-victim exception and sentenced the defendant on all three counts. *Id.* We reversed, concluding that the multiple-victim exception did not apply when the crime for which the defendant was convicted—being an accomplice after the fact—was a victimless crime. *Id.* at 427. *Skipintheday* indicates that convictions for victimless crimes do not justify the imposition of additional sentences.

Before today's case, we have described and applied our multiple-victim exception in over 30 cases; but, we have never held that the multiple-victim exception can support an additional sentence for a victimless crime. Here, for the first time, the majority has used the multiple-victim exception to justify separate sentences on a crime it concludes is victimless. The majority is left in the incongruous position of using the "one sentence per victim" rule implicit in the multiple-victim exception to justify nine sentences for offenses committed against eight "victims" of a "victimless crime." I conclude that such use of the multiple-victim exception is novel and is inconsistent with our decision in *Skipintheday*.

I also conclude that there are other internal inconsistencies in the position taken by the majority. Whether the crime of drive-by shooting has no victims, as the majority claims, or several victims, as I conclude, the majority's position fails. If the drive-by shooting offense has no victims, then a conviction on that offense justifies no further sentences under the multiple-victim exception. If the drive-by shooting offense has several victims, then each of those victims may be covered by the drive-by shooting conviction, or an individual assault conviction, but not both. *See Marquardt*, 294 N.W.2d at 850.

For all the foregoing reasons, I would conclude that the multiple-victim exception does not support the district court's sentencing of Ferguson. Accordingly, I would hold that the district court erred when it sentenced Ferguson for the eight assault convictions and the drive-by shooting because the sentencing violates the single behavioral incident rule of Minn.Stat. § 609.035. Therefore, I would affirm the court of appeals' decision reversing the district court and remanding for sentencing.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

STRAS, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

---

per victim in multiple victim cases."); *Gartland*, 330 N.W.2d at 883 ("[A] defendant who commits multiple offenses in a single behavioral incident may be sentenced to one sentence per victim."); *State v. Marquardt*, 294 N.W.2d 849, 851 (Minn.1980) ("[O]ne sentence may be imposed per victim in multiple-victim cases.").