STATE OF MINNESOTA

IN SUPREME COURT

A24-1757

Hennepin County

Milton K. Sanders,

                    Appellant,

vs.

State of Minnesota,

                    Respondent.

Procaccini, J.
Took no part, Gaïtas, J.

Filed:  July 2, 2025
Office of Appellate Courts

_____

Milton K. Sanders, Moose Lake, Minnesota, pro se.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The district court did not abuse its discretion by denying appellant's motion to correct a sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9, because appellant's consecutive sentences were authorized by law.

2.      Any error in the district court's failure to pronounce appellant's criminal history score at sentencing was harmless.

1

Affirmed.

Considered and decided by the court without oral argument.

OPINION

PROCACCINI, Justice.

Appellant Milton K. Sanders argues that the district court abused its discretion by denying his motion to correct a sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9. In 1997, a jury found Sanders guilty of one count of first-degree murder and two counts of attempted first-degree murder. The district court convicted Sanders of all counts, sentencing him to life in prison for the first-degree murder conviction and to consecutive 180-month prison sentences for the attempted first-degree murder convictions. We affirmed his convictions and sentences on appeal in 1999.

Nearly 25 years later, in May 2024, Sanders filed a motion to correct a sentence, arguing that his sentences were unauthorized by law because they unfairly exaggerated the criminality of his conduct and were based on the wrong criminal history score. The district court denied Sanders's motion, and Sanders appealed. Because we conclude that the consecutive sentences did not unfairly exaggerate the criminality of Sanders's conduct and any error related to Sanders's criminal history score was harmless, we affirm.

**FACTS**

On October 5, 1997, Sanders fired shots outside an apartment building in Minneapolis, killing a 16-year-old victim and injuring two other victims. *State v. Sanders* (*Sanders I*), 598 N.W.2d 650, 652 (Minn. 1999). Respondent State of Minnesota charged Sanders with one count of first-degree murder and two counts of attempted first-degree

2

murder. The State's theory of the case was that Sanders shot and injured two of the victims because he was angry with them, but the 16-year-old victim was an innocent bystander. A jury found Sanders guilty of all three counts. The district court convicted Sanders and sentenced him to life in prison for his first-degree murder conviction and to consecutive 180-month sentences for his two attempted first-degree murder convictions.

Sanders filed a direct appeal raising several claims. Relevant here, he argued that his consecutive sentences unfairly exaggerated the criminality of his conduct. We affirmed Sanders's convictions and sentences. In doing so, we concluded that Sanders's life sentence for first-degree murder and two consecutive 180-month sentences for attempted first-degree murder did not exaggerate the criminality of his conduct because each offense involved a different victim. In other words, we determined that Sanders's consecutive sentences were commensurate with his culpability.

Since his direct appeal, Sanders has filed four different petitions or motions seeking relief from his convictions or sentences. Sanders filed his first petition for postconviction relief in May 2000, making several arguments that are not relevant to this appeal.[1] *See Sanders v. State* (*Sanders II*), 628 N.W.2d 597, 600 (Minn. 2001). The district court denied the petition, and Sanders appealed. We affirmed the district court, concluding that Sanders's claims were procedurally barred by the rule stated in *State v. Knaffla*,

---

[1]  In his first petition, Sanders argued that he received ineffective assistance of trial and appellate counsel; his absence from two pretrial hearings violated his constitutional rights; the prosecutor engaged in misconduct; and the district court abused its discretion by dismissing the jury for some of a witness's testimony to determine how much of the testimony was admissible.

243 N.W.2d 737 (Minn. 1976), and that Sanders failed to show that he met an exception to that rule.[2]

Sanders filed his second postconviction petition in March 2010. *Sanders v. State* (*Sanders III*), 791 N.W.2d 126, 127 (Minn. 2010). Sanders again made several arguments, none of which are at issue in this appeal.[3] The district court denied Sanders's petition, and Sanders appealed. We again affirmed the district court, concluding that Sanders's claims were time-barred under Minnesota Statutes section 590.01, subdivision 4 (2022), and that no exception to the time bar applied.

---

[2] Under the *Knaffla* rule, if a postconviction claim was raised, known, or should have been known at the time of a direct appeal, that claim is procedurally barred and will not be considered in a later petition for postconviction relief. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007) (citing *Knaffla*, 243 N.W.2d at 741). There are two exceptions to this rule for an unraised claim: when "an issue is 'so novel that its legal basis was not reasonably available at the time of the direct appeal' " or when "a court decides that hearing the claim is 'in the interest of justice.' " *Crow v. State*, 923 N.W.2d 2, 9–10 (Minn. 2019) (quoting *Quick v. State*, 757 N.W.2d 278, 280 (Minn. 2008)).

Similarly, the postconviction review statute bars claims in a postconviction petition "that could have been raised on direct appeal of the conviction or sentence." Minn. Stat. § 590.01, subd. 1 (2024). The Legislature enacted this rule in 2005. Act of June 2, 2005, ch. 136, art. 14, § 12, 2005 Minn. Laws 901, 1097 (codified as amended at Minn. Stat. § 590.01, subd. 1). We have not yet decided whether the *Knaffla* rule or its common law exceptions survived the 2005 amendment to the postconviction review statute. *See Hooper v. State*, 838 N.W.2d 775, 787 n.2 (Minn. 2013); *Fox v. State*, 913 N.W.2d 429, 433 n.2 (Minn. 2018); *Onyelobi v. State*, 932 N.W.2d 272, 279 n.3 (Minn. 2019).

[3] In his second petition, Sanders argued that he received ineffective assistance of trial counsel; the district court abused its discretion by denying his requests for a continuance; the evidence was insufficient to support his convictions; the district court erred in instructing the jury; the district court improperly allowed certain testimony; and our application of *Knaffla* to Sanders's first postconviction petition violated his right to due process of law.

In August 2020, Sanders filed a motion asserting that his sentences were unauthorized by law and unfairly exaggerated the criminality of his conduct; his sentences violated his right to a trial under *Blakely v. Washington*, 542 U.S. 296 (2004);[4] and the evidence was insufficient to support his convictions. Although Sanders captioned the motion as a motion to correct a sentence, the district court construed Sanders's motion as a petition for postconviction relief. The district court concluded that Sanders's claims were time-barred under section 590.01, subdivision 4, and procedurally barred under *Knaffla*. In the alternative, the district court concluded that Sanders's sentences were lawful and that he was not entitled to a *Blakely* trial. As a result, the district court denied Sanders's petition. Sanders did not appeal.

Nearly four years later, in May 2024, Sanders filed the pending motion to correct his sentence. In this motion, Sanders argued that his sentences were unauthorized by law because his consecutive sentences unfairly exaggerated the criminality of his conduct and because the district court erred in calculating his criminal history score. The district court denied Sanders's motion on the merits, concluding that Sanders's sentences were authorized by law. As to Sanders's first claim, the district court determined that Sanders's consecutive sentences did not exaggerate the criminality of his conduct because his underlying convictions involved multiple victims. As to Sanders's second claim, the

---

[4]     In *Blakely v. Washington*, the United States Supreme Court held that facts that increase the penalty for a crime beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. 542 U.S. at 301, 305; *see also Davis v. State*, 15 N.W.3d 635, 642–43 (Minn. 2025) (explaining this aspect of *Blakely* and conducting a *Blakely* analysis under Minnesota law).

district court concluded that "[t]here [was] nothing to indicate that" the district court used the incorrect criminal history score at sentencing. Sanders appeals.

## ANALYSIS

Sanders challenges the district court's denial of his motion to correct a sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9. Under this rule, a "court may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9. We review a district court's denial of a motion to correct a sentence for an abuse of discretion. *Townsend v. State*, 867 N.W.2d 497, 500 (Minn. 2015). The district court abuses its discretion "when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Andersen v. State*, 913 N.W.2d 417, 422 (Minn. 2018) (citation omitted) (internal quotation marks omitted).

Sanders contends that the district court abused its discretion by denying his motion to correct a sentence because his sentences were unauthorized by law.[5] "A sentence is not authorized by law when it is 'contrary to law or applicable statutes.' " *Johnson v. State*, 992 N.W.2d 389, 391 (Minn. 2023) (quoting *State v. Schnagl*, 859 N.W.2d 297, 301

---

[5] Sanders also argues that the district court erred by construing his motion to correct a sentence as a petition for postconviction relief. In making this argument, Sanders appears to confuse his August 2020 motion with his May 2024 motion. The May 2024 motion is at issue here, and the district court *did not* construe that motion as a petition for postconviction relief. For that reason, we decline to consider whether the May 2024 motion could have or should have been construed as a petition for postconviction relief.

Relatedly, Sanders contends that his May 2024 motion is neither time-barred nor procedurally barred. Because the district court did not consider whether Sanders's motion was time-barred or procedurally barred, these arguments are not properly before us, and we decline to consider them. *See State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989) (explaining that, in general, "we will not decide issues which are not first addressed by the [district] court").

(Minn. 2015)). As he did below, Sanders argues here that his consecutive sentences were unauthorized by law because (1) the sentences unfairly exaggerated the criminality of his conduct, and (2) the district court miscalculated his criminal history score. We address each argument in turn.

I.

Sanders first contends that his consecutive sentences unfairly exaggerated the criminality of his conduct. We disagree.

To begin, Sanders's argument is barred by the law of the case doctrine. "The law of the case doctrine functions to bar issues that were previously considered and denied in the same case." *Smith v. State*, 974 N.W.2d 576, 581 (Minn. 2022). "We apply this doctrine to a Rule 27 motion when the claim underlying the motion was previously denied on direct appeal." *Id.* at 582. On direct appeal, Sanders argued that "the [district] court unfairly exaggerated [his] criminality by imposing a life sentence for the first-degree murder conviction and two consecutive 180-month sentences for the two attempted first-degree murder convictions." *Sanders I*, 598 N.W.2d at 656. This argument is identical to the claim Sanders makes here. Because we have already determined that Sanders's consecutive sentences *did not* unfairly exaggerate the criminality of his conduct, that determination is the law of the case, and it bars Sanders's claim here. *See id.* at 656–57; *Smith*, 974 N.W.2d at 581.

In addition to being barred by the law of the case doctrine, Sanders's argument fails on the merits. Sanders asserts that his consecutive sentences unfairly exaggerated the criminality of his conduct because Minnesota Statutes section 609.035, subdivision 1

7

(2024), prohibits a person from being punished for multiple offenses that occurred during the same behavioral incident.[6] Although Sanders correctly points to this general rule, he overlooks an important exception to the rule: We have long held that a person *can* be punished for multiple offenses occurring during the same behavioral incident if the offenses involve multiple victims. *State v. Whittaker*, 568 N.W.2d 440, 453 (Minn. 1997). This multiple-victim exception is consistent with the purpose of section 609.035—ensuring that a defendant's punishment is commensurate with their culpability—because "a defendant who commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person." *State ex rel. Stangvik v. Tahash*, 161 N.W.2d 667, 672 (Minn. 1968) (citation omitted) (internal quotation marks omitted).

Under the multiple-victim exception to section 609.035, a district court may impose "multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Skipintheday*, 717 N.W.2d 423, 426 (Minn. 2006). In such cases, the district court has discretion to impose multiple

---

[6]     Minnesota Statutes section 609.035, subdivision 1, states: "[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." This statute "generally 'prohibits multiple sentences, even concurrent sentences, for two or more offenses that were committed as part of a single behavioral incident.' " *State v. Ferguson*, 808 N.W.2d 586, 589 (Minn. 2012) (quoting *State v. Norregaard*, 384 N.W.2d 449, 449 (Minn. 1986)). Section 609.035, subdivision 1, is designed " 'to protect against exaggerating the criminality of a person's conduct and to make both punishment and prosecution commensurate with culpability.' " *Ferguson*, 808 N.W.2d at 589 (quoting *Stangvik*, 161 N.W.2d at 672).

sentences concurrently or consecutively. *State v. Cruz-Ramirez*, 771 N.W.2d 497, 512 (Minn. 2009).

As we explained when Sanders first appealed his convictions and sentences, imposing consecutive sentences for Sanders's first-degree murder conviction and two attempted first-degree murder convictions—each of which involved a different victim—did not unfairly exaggerate the criminality of his conduct. *Sanders I*, 598 N.W.2d at 656–57. When determining " 'whether a consecutive sentence unfairly exaggerates a defendant's criminality, we are guided by past sentences received by other offenders for similar offenses.' " *State v. Alger*, 941 N.W.2d 396, 403 (Minn. 2020) (quoting *Carpenter v. State*, 674 N.W.2d 184, 189 (Minn. 2004)). During the incident here, Sanders shot three individuals, killing one and wounding the other two. We have repeatedly affirmed the imposition of multiple consecutive sentences in cases involving violent crimes against multiple victims. *See, e.g.*, *Cruz-Ramirez*, 771 N.W.2d at 504, 511–12 (upholding consecutive sentences for three counts of attempted first-degree murder involving three victims); *State v. McInnis*, 962 N.W.2d 874, 891–94 (Minn. 2021) (upholding consecutive life sentences for two counts of first-degree murder); *Whittaker*, 568 N.W.2d at 447 (upholding consecutive sentences for one count of first-degree murder, one count of attempted first-degree murder, and six counts of second-degree assault). We have also reversed the imposition of concurrent sentences where the defendant committed violent crimes against multiple victims and the imposition of concurrent sentences understated the defendant's criminality. *See State v. Warren*, 592 N.W.2d 440, 452 (Minn. 1999).

Given our case law holding that consecutive sentences are appropriate when a defendant commits violent crimes against multiple victims, Sanders does not present a compelling argument for reversing his sentences. As a result, in addition to being barred by the law of the case doctrine, Sanders's assertion that his consecutive sentences unfairly exaggerated the criminality of his conduct fails on the merits.[7] We therefore conclude that the district court did not abuse its discretion by determining that the sentences were authorized by law.

## II.

Sanders next contends that the district court miscalculated his criminal history score at sentencing. Sanders specifically asserts that the district court failed to sentence him using a criminal history score of zero, as courts are required to do when imposing permissive consecutive sentences. *See* Minn. Sent. Guidelines II.F (1997) (sentencing guidelines in effect at the time Sanders was sentenced); Minn. Sent. Guidelines 2.F.2.b

---

[7] To the extent that Sanders argues that the district court abused its discretion by imposing multiple consecutive sentences because the imposition of such sentences was an unsupported upward dispositional departure, this argument is based on a misunderstanding of the law. Sanders's sentences were permissive consecutive sentences under the sentencing guidelines that were in effect at the time Sanders was sentenced and the sentencing guidelines that are in effect today. *See* Minn. Sent. Guidelines II.F.2 (1997) (authorizing permissive consecutive sentences for "[m]ultiple current felony convictions for crimes against persons"); Minn. Sent. Guidelines 2.F.2.a(1)(ii), 6 (2024) (authorizing permissive consecutive sentences for "multiple current felony convictions for [certain enumerated] crimes," including first-degree murder and attempted first-degree murder); *Bilbro v. State*, 927 N.W.2d 8, 14 (Minn. 2019) (explaining that permissive consecutive sentences may be imposed without departing from the sentencing guidelines). Accordingly, Sanders's consecutive sentences did not constitute an upward dispositional departure.

(2024) (current sentencing guidelines). This claim fails because any error related to Sanders's criminal history score was harmless.

The Minnesota Sentencing Guidelines provide that a defendant's presumptive sentence is determined by the severity level of the offense and the defendant's criminal history score. Minn. Sent. Guidelines II, IV (1997); Minn. Sent. Guidelines 2, 4.A (2024). When a district court imposes consecutive sentences for multiple offenses, it must use a zero criminal history score or the mandatory minimum for the offense (whichever is greater) to determine the presumptive sentence for each offense after the first offense. Minn. Sent. Guidelines II.F (1997); Minn. Sent. Guidelines 2.F.2.b (2024).

Here, the district court sentenced Sanders to life in prison for the first-degree murder conviction and to consecutive 180-month sentences for the two attempted first-degree murder convictions. Sanders's criminal history score at the time of sentencing is not apparent from the record, and the district court did not pronounce a criminal history score when sentencing Sanders. But, on this record, we conclude that any error in the district court's failure to pronounce Sanders's criminal history score at sentencing was harmless for two reasons: (1) Sanders's criminal history score would have had no bearing on his sentence for first-degree murder, and (2) the sentences imposed for attempted first-degree murder were consistent with a sentence based on a criminal history score of zero, as required by the sentencing guidelines.

First, Sanders's criminal history score at the time of sentencing is irrelevant to his first-degree murder sentence. First-degree murder carries a mandatory life sentence. Minn. Sent. Guidelines II.A (1997); Minn. Sent. Guidelines 2.A.3 (2024). As a result, Sanders's

11

criminal history score had no impact on his sentence for first-degree murder. *See* Minn. Sent. Guidelines II.A (1997); Minn. Sent. Guidelines 2.A.3 (2024); *see also Greer v. State*, 973 N.W.2d 918, 924 (Minn. 2022) (concluding that a violation of the defendant's right to allocution was harmless because it did not affect the defendant's mandatory life sentence).

Second, Sanders's sentences for attempted first-degree murder were consistent with the required criminal history score for consecutive sentencing. Once the district court determined that Sanders's sentences for his two attempted first-degree murder convictions should be imposed consecutively to his life sentence, the district court was required to use a criminal history score of zero when sentencing Sanders for these convictions. Minn. Sent. Guidelines II.F (1997); Minn. Sent. Guidelines 2.F.2.b (2024). Although the district court did not *pronounce* that it was sentencing Sanders based on a criminal history score of zero, the district court appears to have done just that. At the time of Sanders's sentencing, the presumptive sentencing range for attempted first-degree murder with a criminal history score of zero was 176–184 months in prison, with 180 months representing a middle-of-the-box sentence. Minn. Sent. Guidelines II.G (1997). By contrast, the presumptive sentencing range for the same offense with a criminal history score of one was 186–194 months in prison, with a 190-month middle-of-the-box sentence. *Id.* Because Sanders's consecutive 180-month sentences not only represent middle-of-the-box sentences for attempted first-degree murder with a criminal history score of zero but also fall below the presumptive sentencing range for the same offense with a criminal history score of one, we can confidently presume that the district court used a criminal history score of zero when sentencing Sanders, as the guidelines prescribe. We therefore conclude

12

that any error in the district court's failure to pronounce Sanders's criminal history score at sentencing was harmless.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.


GAÏTAS, J., took no part in the consideration or decision of this case.