**STATE of Minnesota, Appellant,**

v.

**Randolph Wilbert STATEN,
Respondent.**

**No. CX–86–486.**

Court of Appeals of Minnesota.

Aug. 5, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Asst. County Atty., Minneapolis, for appellant.

Kenneth E. Tilsen, St. Paul, for respondent.

Heard by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ. Considered and decided by the full court sitting en banc.

## OPINION

NIERENGARTEN, Judge.

This is an appeal by the State from a sentence imposed on respondent Randolph

Staten. The trial court departed downward durationally from a one year and one day presumptive sentence and imposed 90 days. Finding no substantial and compelling circumstances to justify the departure, we reverse and remand for resentencing.

## FACTS

From June to August 1985 Staten wrote 76 checks on a closed account in the Minneapolis area, totaling over $8,000. Staten pleaded guilty to an amended charge of theft over $250. The presumptive sentence, based on a severity II offense and a criminal history of 0 was a stayed sentence of 12 months and one day.

At sentencing the trial court departed downward durationally by sentencing Staten to 90 days in the Hennepin County Workhouse, staying execution of sentence. Staten was placed on probation for one year and was ordered to continue chemical dependency treatment and to refrain from using any controlled substance.

The State appealed the sentence, challenging the downward, durational departure.

## ISSUE

Does the record establish mitigating factors constituting "substantial and compelling circumstances" to justify the trial court's downward, durational departure?

## ANALYSIS

■ The issue is whether there were mitigating circumstances present which constituted substantial and compelling circumstances justifying the departure. *State v. Cizl,* 304 N.W.2d 632, 634 (Minn.1981); Minnesota Sentencing Guidelines II.D.

> Just as an upward durational departure is justified if the defendant's conduct is significantly more serious than that typically associated with the commission of the offense, a downward, durational departure is justified if the defendant's conduct is significantly less serious than that typically involved in the commission of the offense.

*State v. Mattson,* 376 N.W.2d 413, 415 (Minn.1985). *See generally State v. Nel-*

*son,* 329 N.W.2d 827 (Minn.1983) (reversing downward, durational departure because of absence of mitigating factors).

To be a basis for a downward departure a factor must tend to excuse or mitigate the offender's culpability for the offense. *See State v. Wall,* 343 N.W.2d 22, 25 (Minn. 1984); *State v. Esparza,* 367 N.W.2d 619, 621 (Minn.Ct.App.1985). The following factors were cited by the trial court at sentencing and in its departure report.

■ 1. *Extensive Publicity.* The trial court concluded that Staten, a member of the Minnesota House of Representatives, has suffered because this case was well publicized in the news media. This is an *employment factor* (occupation or impact of sentence on profession or occupation), that should not be used as a reason for departure. Sentencing under the guidelines is to be neutral with respect to race, gender, employment, social or economic status. Minnesota Sentencing Guidelines I and II.D.1.

The dissent suggests defendant has suffered extensive publicity, implying that fact should act as a mitigating agent in sentencing. Judge Frankel in *United States v. Bergman,* 416 F.Supp. 496, 502–03 (S.D.N.Y.1976) answered that argument as follows:

> "Defendant's second point about his public humiliation is the frequently heard contention that he should not be incarcerated because he 'has been punished enough.' The thought is not without some initial appeal. If punishment were wholly or mainly retributive, it might be a weighty factor. In the end, however, it must be a matter of little or no force. Defendant's notoriety should not in the last analysis serve to lighten, any more than it may be permitted to aggravate, his sentence."

■ 2. *Confinement.* The trial court devoted a considerable amount of time, in sentencing, on the philosophy of confinement and concluded that confinement was not necessary as a means of punishment in this case. However, since the presumptive sentence was not imprisonment, discussion

of confinement was irrelevant to a durational departure.

■ 3. *Restitution.* The trial court referred to matters which "do not appear of record". One was Staten's allegedly making full restitution prior to the date set for sentencing. Making a finding in support of departure without adequate record foundation is itself rather perilous. Even if such relaxed conduct were permissible, restitution is not a mitigating factor either identifiable in the guidelines or recognized by case law.

■ 4. *Prior Check-Writing Incidents.* Again, admittedly without record foundation, the court's finding that Staten had previously written bad checks under similar circumstances which had been covered by his wife is not a factor identifiable either in the guidelines or recognized by case law. It certainly is not a substantial ground tending to excuse or mitigate Staten's culpability. Minnesota Sentencing Guideline II.D.2.a.(4).

■ 5. *Likelihood of Completing Probation.* The trial court was aware that if Staten were given a stay of imposition and successfully completed probation, under Minn.Stat. § 609.13, subd. 1 (1984) the conviction, although a felony, would be deemed a misdemeanor. The trial court believed the offense would eventually be reduced to a misdemeanor and thus felt it more desirable to immediately treat Staten's offense as a misdemeanor.

In *State v. Cizl,* 304 N.W.2d 632 (Minn. 1981) the supreme court reversed the trial court's downward departure in imposing a gross misdemeanor sentence, rather than the presumptive felony sentence of one year and one day. Chief Justice Sheran, recognizing the attempt by the trial court to reach a result it desired by short-cutting the sentencing guidelines, discussed the identical factor relied on by this trial court as follows:

> Finally, the trial court's belief that it was not in the public interest or in defendant's interest that defendant have a felony record was merely a restatement of the result which the trial court desired.

> The purpose of the trial judge's departure, which was to avoid burdening the defendant with a felony criminal record, could be substantially accomplished by staying the imposition of sentence. * *

*Id.* at 634.

We conclude that the record does not establish substantial and compelling circumstances to justify the downward, durational departure.

## DECISION

The record does not demonstrate mitigating factors which constitute substantial and compelling circumstances to justify a downward, durational departure in this case. We vacate the sentence imposed and remand the case to the district court for resentencing.

Reversed and remanded for resentencing.

HUSPENI, Judge (concurring specially).

In *State v. Esparza,* 367 N.W.2d 619 (Minn.Ct.App.1985), a rare instance in which this court has reversed a downward durational departure, we observed:

> In determining that this matter must be reversed and remanded for resentencing, we do not foreclose the sentencing court from considering other mitigating factors which may have been present. * * * We do not restrict the trial court's discretion, upon remand, to impose the appropriate guidelines sentence or to reconsider a downward departure based upon any relevant factor contained in the guidelines.

*Id.* at 621.

While I agree with the majority that the current state of the record does not demonstrate mitigating factors which support a downward durational departure, I would not require the trial court upon remand to impose the guidelines sentence. Instead, I would permit the continued exercise of judicial discretion pursuant to *Esparza.*

WOZNIAK, Judge.

I join in the special concurrence of Judge Huspeni.

RANDALL, Judge, dissenting.

I respectfully dissent from the majority and would have affirmed the trial court.

Defendant's crime was purely economic. The vast majority of appeals under the Minnesota Sentencing Guidelines arise on cases involving violent and assaultive behavior. Almost all cases taken by the Minnesota Supreme Court and our court have involved defendants appealing upward departures or appealing a trial court's decision not to depart downward. Appeals by the State generally focus on the refusal of a trial court to depart upwards or the granting of a downward departure in cases involving crimes of violence. Appeals by the State on economic crimes, where the question of incarceration is not in issue,[1] and the trial court's only decision is to shorten the length of a presumptive sentence are rare.

I find nothing in the record which mandates reversal of the deference accorded a trial court on sentencing.

The majority opinion discusses the different factors cited by the trial court at sentencing and in its departure report. I agree that the record is sparse if one looks for all the classic elements to be present for a downward durational departure. Minn. Sentencing Guidelines II.D.2. However, the mitigating factors listed under downward durational departures are of little use in the greater majority of crimes. It is uncommon to see requests for leniency based on a claim that the victim was an aggressor in the incident, or the offender suffered some kind of mental impairment short of not guilty by reason of insanity.

On the other hand, the factors for a trial court to consider on a downward dispositional departure are realistic and corroborate the common sense approach of experienced trial courts who fashion appropriate sentences to fit the crime and the offender. In considering a downward dispositional departure, a trial court is free to look at a defendant's amenability to probation, including age, employment status, family support, receptiveness to recommended chemical dependency or emotional counseling, remorse, restitution, non-violence, cooperativeness, and lack of a prior criminal record. In general, those are the qualities which indicate whether a defendant has a chance for honest rehabilitation and thus deserving of some leniency. *See State v. Biederstedt*, 367 N.W.2d 84 (Minn. Ct.App.1985); *State v. Ritt*, 363 N.W.2d 908 (Minn.Ct.App.1985); *State v. Nevins*, 359 N.W.2d 66 (Minn.Ct.App.1984); *State v. Malinski*, 353 N.W.2d 207 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn.1984).

The guidelines state that "Decisions with respect to disposition and duration are logically separate. Departures with respect to disposition and duration also are logically separate decisions." Minn. Sentencing Guidelines Commentary II.D.02. I disagree. However, common sense dictates that there must be some reasonable overlap between the factors for a downward durational departure and factors for downward dispositional departure. Some of the same considerations that give a trial court discretion to stay execution of a presumptive sentence of incarceration and place a defendant on probation[2] should be allowed to a trial court in deciding that the interests of justice will be served by a sentence shorter than the presumptive.[3]

The overlap between the two comes into play under mitigating factors for a downward durational departure. II.D.2.a.(4) ("Other substantial grounds exist which tend to excuse or mitigate the offender's culpability, although not amounting to a defense.").

The guidelines do not expressly disavow quick and willing restitution as a factor

---

1. The State concedes that the presumptive sentence is one year and one day with the trial court free to stay execution or stay imposition and place appellant on probation with whatever terms the court deems reasonable.

2. Downward dispositional.

3. Downward durational.

relevant to a downward durational departure. Historically, the culpability of a defendant who has been convicted of some form of theft or larceny is mitigated by the offender's admission of guilt and willingness to make whole those whom he has harmed.

The majority takes the position that on a downward durational departure, restitution is not a mitigating factor either identifiable in the guidelines or recognized by case law. I take the position restitution is at least a mitigating factor which a trial court may consider and, since not expressly excepted by the guidelines or case law, is an allowable factor that a trial court can look at as part of the total picture when considering departing downward.

One of the trial court's reasons for departure was that respondent had suffered because of the extensive publicity in the news media relating to his position as a member of the Minnesota House of Representatives. The majority argues that the extensive publicity comes under "employment factor" and thus should not be used as a reason for departure. *See* Minn. Sentencing Guidelines II.D.1.c. I do not believe that the extensive publicity suffered by appellant and his family throughout the case was an "employment factor" in any way favoring appellant. To the contrary, appellant was subjected to much more extensive publicity and public embarrassment than one not an elected official would have been subject to. Thus, I concur with the reasoning of the trial court that appellant's position as an elected official did not work for him but, in effect, worked against him.

I have previously indicated that the record for appellate review is not as clear cut for or against a downward durational departure as one might hope for. On the other hand, in close cases involving economic crimes where no one advocates incarceration and the only question is the length of the sentence to hold over respondent's head while on probation, I would have deferred here to the discretion of the trial court.

I distinguish *State v. Cizl*, 304 N.W.2d 632 (Minn.1981) on the grounds that *Cizl*

involved burglary, a crime of violence; did not involve the question of substantial restitution as we have here; and the trial court in *Cizl* used defendant's voluntary intoxication at the time of the offense as a mitigating factor, which is specifically excluded by the guidelines. II.D.2.a.3.

I would affirm the trial court.

POPOVICH, Chief Judge (dissenting).

I concur in the dissent of Judge Randall.

LESLIE, Judge (dissenting).

I concur in the dissent of Judge Randall.

PARKER, Judge (dissenting).

I concur in the dissent of Judge Randall.

CRIPPEN, Judge, dissenting.

I join in the dissent of Judge Randall. Particularly, I agree that this case is not governed by *State v. Cizl*, 304 N.W.2d 632 (Minn.1981). In *Cizl*, the trial court attempted to identify policy reasons why it could fairly disregard the classification of a crime as a felony.

As the majority indicates, a downward dispositional departure must be based on a factor tending to mitigate the offender's culpability for the offense. Minn. Sentencing Guidelines II.D.2.a (4). Culpability of the defendant in *Cizl* was not in question. Here, however, the trial judge has specifically indicated his concerns on issues of culpability. Bad checks of the defendant had been written before but had been covered later. Restitution had been made on checks described in the present complaint.

Culpability in connection with bad check cases is difficult to assess, and the topic begs for consideration of the individual circumstances of a case. The accusation and the conviction here were under the theft statute. *See* Minn.Stat. § 609.52 (1984). The checks in question were written shortly after the defendant's account had been closed. Prior bad checks had been paid. It was open to question whether the defendant's conduct could be categorized as the willful taking with an intent to deprive the

owner permanently of property. *See* Minn. Stat. § 609.52, subd. 2(1).

Because of difficulties connected with the proof of theft in the issuance of bad checks, the topic has been given special attention by the Minnesota Legislature. With various presumptions of intent, the issuance of a dishonored check is a separate crime under Minn.Stat. § 609.535 (1984). Offenses under this statute are misdemeanors.

It is evident to me that the trial judge has identified the existence of substantial grounds that tend to mitigate the defendant's culpability in connection with the issuance of checks. Given the existence of reasons for departure, I cannot identify any other basis to conclude that the trial court's sentence is disproportional to the offense. In the absence of reason for "strong feeling" about disproportionality, we should affirm. *See State v. Schantzen,* 308 N.W.2d 484, 487 (Minn.1981).