**STATE of Minnesota, Respondent,**

v.

**Kefa Apiemi KEBASO, Appellant.**

**No. A04–1239.**

Supreme Court of Minnesota.

April 13, 2006.

Bruce Douglas Nestor, De Leon & Nestor, Minneapolis, for Appellant.

Mike Hatch, Attorney General, St. Paul, Jennifer Marie Inz, Asst. Eden Prairie City Attorney, Minneapolis, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

This case presents the issue of whether a court is permitted to consider the immigration consequences to a criminal defendant when deciding which of multiple sentences to vacate or which of multiple offenses to sentence on under Minn.Stat. § 609.035 (2004). The court of appeals concluded that such consequences may not be considered in the context of sentencing under section 609.035. *State v. Kebaso* (*Kebaso II*), No. A04–1239, 2005 WL 1153727, at *3 (Minn.App. May 17, 2005). We affirm, holding that immigration consequences to a criminal defendant are not a proper consideration in a court's decision as to which of multiple sentences to vacate or which of multiple offenses to sentence on under section 609.035.

On December 25, 2001, appellant Kefa Kebaso's ex-wife, Emily Kefa, placed a 911 call from an apartment in Eden Prairie but abruptly left the phone. The call remained connected, however, and the 911 dispatcher could hear a woman screaming for someone to call 911. Eden Prairie police responded to the call. Upon arriving at the apartment, police officers could hear a man and a woman arguing inside and could hear a woman scream the words "knife" and "kill me." After receiving no response to their knock, the officers kicked in the door and entered the apartment.

Inside they found Kebaso, Emily, and Kebaso's 12–year–old son in the living room. Emily appeared very upset and was crying. The officers saw a butcher cleaver under a chair in the living room, and Emily told one of the officers, "That's the knife that [Kebaso] was going to use to kill me." Emily told the officers that she tried to leave the apartment but Kebaso showed her the cleaver and prevented her from leaving. Emily said she became scared and called 911, but Kebaso took the phone away from her.

Based on their discussions with Emily and Kebaso's son, the officers placed Kebaso under arrest. On December 27, 2001, a complaint was filed in Hennepin County charging Kebaso with domestic assault and interference with a 911 call, both gross misdemeanors, and disorderly conduct, a misdemeanor. Kebaso waived his right to a jury trial and, following a bench trial, was found guilty on all three counts. On the gross misdemeanor counts, the district court sentenced Kebaso to concurrent terms of 365 days in the workhouse, stayed execution of 245 days for each sentence, and placed Kebaso on probation for 3 years. Kebaso filed a motion for resentencing, asking that his sentence be reduced to not more than 364 days to avoid adverse immigration consequences. The district court denied the motion on the grounds that immigration consequences are immaterial to a court's decision on punishment.

Kebaso appealed.[1] The court of appeals affirmed Kebaso's convictions but deter-

1. Kebaso did not appeal the district court's    denial of his motion for resentencing. In-

mined that the two gross misdemeanors arose from a single behavioral incident and that Minn.Stat. § 609.035 permitted sentencing on only one of the offenses. *State v. Kebaso (Kebaso I )*, No. C1–02–596, 2003 WL 1702258, at *3 (Minn.App. Apr.1, 2003). The court remanded with instructions for the district court to vacate one of the two sentences for the gross misdemeanors. *Id.*

■■■ On remand, the district court refused to vacate either of the sentences because "the sentence[s] imposed on the gross misdemeanors were concurrent and reflected one sentence as one behavioral incident. By operation of law only one sentence was imposed." Kebaso appealed this decision, asking that the court of appeals vacate the domestic assault sentence because that offense would constitute an "aggravated felony" [2] for immigration purposes if the sentence for it remained in place. Conviction of an "aggravated felo-

ny," as defined for immigration purposes, would likely result in Kebaso's deportation.[3]

■■■ The court of appeals concluded that the district court erred by failing to vacate one of Kebaso's sentences pursuant to section 609.035. *Kebaso II,* 2005 WL 1153727, at *2. The court of appeals then vacated the sentence for interference with a 911 call, reasoning that domestic assault is a more serious offense because it is a crime against a person, while interference with a 911 call "is effectively a crime against state administrative services." *Id.* The court noted that the two gross misdemeanor offenses carry the same maximum potential sentence.[4] *Id.* The court rejected Kebaso's request that it consider the immigration consequences to Kebaso when deciding which sentence to vacate, concluding that it was bound by court of appeals precedent that "possible deportation because of immigration status is not a proper

stead, he challenged the sufficiency of the evidence supporting the domestic assault conviction and the imposition of multiple sentences for the two gross misdemeanors. *See State v. Kebaso (Kebaso I )*, No. C1–02–596, 2003 WL 1702258, at *1 (Minn.App. Apr.1, 2003).

2. An offense can qualify as an "aggravated felony" under immigration law even if the offense is classified as a misdemeanor under state law. *See Wireko v. Reno*, 211 F.3d 833, 835–36 (4th Cir.2000). An aggravated felony is defined as, inter alia, "a crime of violence * * * for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F) (2000). "Crime of violence" means, inter alia, "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a) (2000). "Term of imprisonment," as used in the definition of aggravated felony, denotes the full extent of the sentence imposed, including time stayed by the sentencing court. 8 U.S.C. § 1101(a)(48)(B) (2000).
Because Kebaso's domestic assault involved the threatened use of physical force and be-

cause Kebaso received a 1–year sentence for it, it constitutes an aggravated felony under immigration law. Interference with a 911 call, however, is not an aggravated felony because it is not a crime of violence.

3. An alien who has been convicted of an aggravated felony is deportable from and subsequently permanently inadmissible to the United States. 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1182(a)(9)(A)(ii) (2000). Such aliens are also ineligible for cancellation of removal. 8 U.S.C. § 1229b(a) (2000).

4. The court of appeals also remarked that the two gross misdemeanors are ranked at the same severity level under the sentencing guidelines. *Kebaso II,* 2005 WL 1153727, at *2. This is incorrect. The sentencing guidelines provide presumptive sentences only for felony offenses. *See* Minn. Sent. Guidelines II.C. Gross misdemeanor offenses, including gross misdemeanor domestic assault and interference with a 911 call, are not ranked under the guidelines. *See* Minn. Sent. Guidelines V.

consideration in criminal sentencing." *Id.* at *3.

■ We granted review on the narrow issue of whether the court of appeals erred in refusing to consider the potential immigration consequences to Kebaso when deciding which sentence to vacate. Whether courts are prohibited from considering immigration consequences when deciding which of multiple sentences to vacate or which of multiple offenses to sentence under Minn.Stat. § 609.035 is a question of law, which we review de novo. *See In re R.J.E.,* 642 N.W.2d 708, 710 (Minn.2002).

Kebaso argues that the court of appeals erred when it concluded that it was prohibited from considering the possible immigration consequences to him of its decision to vacate the sentence for interference with a 911 call instead of the sentence for domestic assault. Kebaso contends that immigration consequences are a relevant and lawful consideration in criminal sentencing and that nothing in Minnesota case law bars consideration of immigration consequences in sentencing decisions.[5]

■ Minnesota Statutes § 609.035 "prohibits multiple sentences, even concurrent sentences, for two or more offenses that were committed as part of a single·behavioral incident." *State v. Norregaard,* 384 N.W.2d 449, 449 (Minn.1986). The purpose of section 609.035 is to "ensure[ ] that punishment is commensurate with the crime committed." *State v. Bookwalter,* 541 N.W.2d 290, 294 (Minn.1995). We have stated that section 609.035 contemplates that a defendant will be punished for the "most serious" of the offenses arising out of a single behavioral incident because "imposing up to the maximum punishment for the most serious offense will include punishment for all offenses." *State v. Johnson,* 273 Minn. 394, 399, 141 N.W.2d 517, 522 (1966); *see also State v. Morris,* 281 Minn. 119, 123, 160 N.W.2d 715, 718 (1968).

While we have never explicitly outlined how appellate courts should determine which of multiple offenses is the most serious under section 609.035, we have provided some guidance on this issue. We have indicated that an appellate court vacating a sentence or sentences pursuant to section 609.035 should look to the length of the sentences actually imposed by the district court to ascertain which offense is the most serious, leaving the longest sentence in place. *See, e.g., Norregaard,* 384 N.W.2d at 450; *State v. Herberg,* 324 N.W.2d 346, 350 (Minn.1982); *State v. Boley,* 299 N.W.2d 924, 926 (Minn.1980). In addition, we have implicitly approved the use of the sentencing guidelines' severity-level rankings as a method for determining which of multiple felony offenses is the most serious. *See State v. Van Gorden,* 326 N.W.2d 633, 634 (Minn.1982). Further, the court of appeals has suggested that courts should compare the maximum potential sentence for each of multiple offenses to determine which offense is the most serious.[6] *See State v. Alt,* 529 N.W.2d 727, 731 (Minn.App.1995).

---

5. The state did not participate in this appeal.

6. The court of appeals in *State v. Alt,* faced with two felony offenses, did not specify whether the maximum "potential punishment" it referred to meant the presumptive guidelines sentence or the statutory maximum sentence. *See State v. Alt,* 529 N.W.2d 727, 731 (Minn.App.1995). We need not resolve this ambiguity here because Kebaso's case involves gross misdemeanors, which do not carry presumptive sentences under the sentencing guidelines. *See* Minn. Sent. Guidelines II.C. The relevant maximum potential sentence in a case involving gross misdemeanors is the statutory maximum sentence for each offense.

■ In this case, the court of appeals correctly noted that gross-misdemeanor domestic assault and interference with a 911 call carry the same statutory maximum potential sentence. *Kebaso II*, 2005 WL 1153727, at *2; *see* Minn.Stat. §§ 609.2242, subd. 2, 609.78, subd. 2 (2004). Further, the district court imposed identical sentences on the two gross misdemeanor offenses. *Kebaso II*, 2005 WL 1153727, at *1. Consequently, the court of appeals looked to the nature of the two offenses to determine which offense is the more serious. The court concluded that domestic assault is a more serious offense because it is a crime against a person, while interference with a 911 call is a crime against government administrative services. *Id.* at *2.

■ We approve of the analysis employed by the court of appeals in this case to determine which offense is the most serious for purposes of section 609.035. When multiple gross misdemeanors carry the same statutory maximum sentence, it is proper for a court to look to the nature of the offenses to determine which offense is the most serious. The court of appeals' conclusion that crimes against a person are typically more serious than other sorts of crimes is entirely reasonable. *See generally* Minn. Sent. Guidelines V (generally ranking crimes against a person at higher severity levels than crimes against government administration or property crimes). More specifically, when multiple gross misdemeanor offenses carry the same statutory maximum potential sentence and the district court imposed the same sentence for each offense, the offense that formed the essence of the behavioral incident is the most serious offense for purposes of section 609.035. Here, the essence of the criminal conduct was the domestic assault; the subsequent interference with a 911 call was only incidental. Consequently, the

court of appeals did not err in concluding that the domestic assault was the more serious offense.

The court of appeals expressly rejected Kebaso's request that it consider the potential immigration consequences to him when determining which sentence to vacate. *Kebaso II*, 2005 WL 1153727, at *3. The court considered itself bound by a prior court of appeals case, which held "possible deportation * * * is not a proper consideration in criminal sentencing." *Id.* (citing *State v. Mendoza*, 638 N.W.2d 480, 483 (Minn.App.2002), *rev. denied* (Minn. Apr. 16, 2002)).

■ We agree with the court of appeals' conclusion that immigration consequences are not relevant to the inquiry of which offense is the most serious under section 609.035. Such consequences are entirely unrelated to the essence of the behavioral incident and the nature of the offenses. Thus, we hold that a court may not consider the potential immigration consequences to a criminal defendant when deciding which of multiple sentences to vacate or which of multiple offenses to sentence on under Minn.Stat. § 609.035.

■ Kebaso's attempt to analogize immigration consequences to other factors that courts consider in sentencing, such as the presence of family support, disruption of employment, and a defendant's status as a parent, is unavailing. As Kebaso notes, courts at times consider such factors in the context of dispositional departures under the sentencing guidelines. *See State v. Trog*, 323 N.W.2d 28, 31 (Minn.1982); *State v. Staten*, 390 N.W.2d 914, 918 (Minn.App.1986); *State v. Sherwood*, 341 N.W.2d 574, 577 (Minn.App.1983). But, while such factors may be relevant to a court's decision as to the appropriateness of probation, they are not relevant to a court's analysis of which offense to sentence on under section 609.035. Family

disruption caused by the immigration consequences of a conviction, as well as the immigration consequences themselves, are irrelevant to the determination of which offense is the most serious.

In addition, Kebaso argues that a court-created rule that prohibits consideration of immigration consequences in sentencing decisions would improperly intrude on the authority of the legislature to establish sentences for criminal acts. However, while "[t]he power to fix the limits of punishment for criminal acts lies with the legislature[,] * * * the imposition of a sentence in a particular case within those limits is a judicial function." *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002) (citation omitted). In section 609.035, the legislature left courts with discretion to determine which of multiple offenses to sentence on and did not specify which factors may or may not be considered in making that decision. *See Alt*, 529 N.W.2d at 731. Thus, we are free to provide guidance as to proper and improper considerations in sentencing under section 609.035.[7]

As an alternative basis for reversal, Kebaso argues that the court of appeals erred by vacating his sentence for interference with a 911 call because the court lacked an adequate record to "assess the individualized circumstances related to Kebaso's immigration status" and thus could not make an informed decision about which sentence to vacate. However, Kebaso does not specify any particular facts that he was unable to present to the court of appeals that were necessary for it to make an informed decision.

The court of appeals had authority to vacate one of Kebaso's sentences pursuant to Minn.Stat. § 244.11, subd. 2(b) (2004), which grants the court of appeals the power to vacate a sentence that is "inconsistent with statutory requirements." Because the court of appeals correctly determined that it could not consider potential immigration consequences in deciding which sentence to vacate, the fact that the court may not have been aware of all of the details of Kebaso's immigration status did not affect the court's decision. *Kebaso II*, 2005 WL 1153727, at *3. Kebaso's argument therefore lacks merit.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.

---

7. While we agree with the court of appeals' decision in this case, we do not address its broad assertion that "possible deportation because of immigration status is not a proper consideration in criminal sentencing." *Kebaso II*, 2005 WL 1153727, at *3. We acknowledge the concern articulated by a number of federal courts that permitting consideration of immigration consequences in sentencing allows courts to use their sentencing power to circumvent immigration laws, thereby encroaching on the prerogative of Congress to set the immigration consequences of criminal acts. *See, e.g., United States v. Maung*, 320 F.3d 1305, 1309 (11th Cir.2003); *United States v. Aleskerova*, 300 F.3d 286, 299–301 (2d Cir.2002). But because Kebaso did not seek review of the district court's initial sentencing decision or its refusal to reduce his sentence to 364 days, the question of whether immigration consequences may be considered in gross misdemeanor sentencing is not before us in this case. While we note that judges have broad discretion in sentencing on misdemeanors and gross misdemeanors and should consider all "facts bearing on the exercise of sentencing discretion," *State v. Lambert*, 392 N.W.2d 242, 243–44 (Minn.1986), we leave resolution of this broader question for another day.