*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0071**

State of Minnesota,
Respondent,

vs.

Jeremy Ed Cadwell,
Appellant.

**Filed December 1, 2014**
**Affirmed in part, reversed in part, and remanded**
**Stauber, Judge**

St. Louis County District Court
File No. 69DU-CR-13-2635

Lori Swanson, Attorney General, Robert Plesha, Assistant Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from his conviction of felony domestic assault and disorderly conduct, appellant argues that (1) the district court erred by admitting evidence of appellant's

relationship with the victim; (2) the district court abused its discretion by admitting relationship evidence that constituted inadmissible hearsay; (3) admission of the relationship evidence violated appellant's constitutional confrontation rights; and (4) the district court erred by sentencing appellant on both the domestic assault conviction and the disorderly conduct conviction. We reverse appellant's sentence on the disorderly conduct conviction and remand for the district court to vacate that sentence, and affirm on all other issues.

**FACTS**

At approximately 11:00 p.m. on May 14, 2013, Duluth police were dispatched to Second Avenue East and Second Street in the downtown area for "unknown trouble" because "there was a female and a male yelling and . . . the female was asking for help." Upon his arrival at the scene, Officer Todd Simmons was directed to the lobby of the Tri Towers Apartments. When he entered the lobby, he noticed appellant Jeremy Ed Cadwell "standing over" and "yelling" at his wife, L.C., "who was sitting on the ground in a corner." While Simmons handcuffed appellant, he noticed that both appellant and L.C. smelled of alcohol; he also noticed that L.C. had been crying, was trembling, and seemed "extremely distraught" and frightened. Appellant and L.C. each told police that they did not have a physical altercation.

Appellant was charged with felony domestic assault under Minn. Stat. § 609.2242, subd. 4 (2012). The district court granted the state's pretrial motion to admit evidence of three prior domestic-assault incidents involving appellant and L.C. as evidence to

2

establish the history of their relationship under Minn. Stat. § 634.20 (2012). Neither appellant nor L.C. testified at appellant's trial.

During trial, in addition to the evidence of the relationship evidence, the government offered the testimony of Officer Simmons, as well as the Tri Towers Apartments manager and another police officer, who testified about how a videotape of the assault was made, preserved, and transferred to police. The videotape shows the sequence of the assault, including that: (1) L.C. ran into the Tri Towers lobby from one side door and tried unsuccessfully to exit the door on the other side; (2) L.C. cowered and raised her arms in a defensive pose when appellant cornered her and raised his arm over her as if to strike her; (3) appellant dragged L.C. by her arm until she fell down and crouched on the ground; and (4) appellant yelled at, leaned on, and pulled his arm back to strike L.C., then walked away and returned to yell at her several times more while she was in a prone position.

At the close of trial, the district court permitted respondent to add the additional charge of disorderly conduct as a lesser included offense of the assault offense. The verdict forms submitted to the jury included two counts of domestic assault, one for intent to cause fear and the other for intent to inflict bodily harm, and one count of disorderly conduct. During deliberations, the jury asked to view the videotape of the assault a second time, and the district court permitted them to do so.

The jury convicted appellant of all charges. The district court imposed a 24-month executed sentence on the domestic assault conviction and a 90-day jail sentence on the disorderly conduct conviction. This appeal followed.

3

**D E C I S I O N**

**I.**

Appellant argues that the district court abused its discretion by permitting respondent to elicit evidence of appellant's and L.C.'s relationship under Minn. Stat. § 634.20, which provides:

> Evidence of similar conduct by the accused against the victim of domestic abuse . . . is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. "Similar conduct" includes, but is not limited to, evidence of domestic abuse, violation of an order for protection . . .; violation of a harassment restraining order . . .; or [stalking] or [obscene or harassing telephone calls].

The district court may admit relationship evidence "to demonstrate the history of the relationship between the accused and the victim of domestic abuse" and to place the offense in the appropriate context. *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008). This court reviews a district court's decision to admit relationship evidence for abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008).

The district court allowed three law enforcement officers to testify to their observations about three previous domestic-assault incidents between appellant and L.C. in which appellant was the aggressor and L.C. was the victim. First, Officer James Nielson testified to responding to a call in 2004 in which L.C. had a gash on her forehead; she told Nielson her injury was caused by appellant throwing a beer can at her.

4

Second, Investigator Matthew McShane testified to a 2004 incident in which he responded to a report of an assault. L.C. told him that appellant "punched her with a closed fist twice in the side of the face and then pushed her to the ground." Investigator McShane stated that L.C.'s injuries were consistent with her statements about the incident. And third, Officer Nicholas Lepak testified to responding to a domestic call in 2009 in which L.C. chased appellant with a knife, but appellant was arrested because the responding officers determined that appellant was the aggressor and L.C. was acting in self defense when she wielded the knife. Before each officer testified, the jury was instructed that the evidence was offered for the limited purpose of demonstrating the nature and extent of the relationship between appellant and L.C., and not for consideration "of any behavior other than the charged offense."

Appellant argues only that the district court abused its discretion by admitting the relationship evidence because, even if probative, it was highly prejudicial. The evidence was probative to establish the context of appellant's and L.C.'s relationship, but it was also highly prejudicial for the same reason. *See State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (stating that unfair admission of relationship evidence "is not merely damaging evidence, [or] even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." (quotation omitted)); *Lindsey*, 755 N.W.2d at 756 ("Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value."). The district court lessened the prejudicial effect of the evidence by giving a limiting instruction before each officer testified, and the district

5

court did not permit the jury to hear evidence about any convictions that were the result of the incidents. *See Lindsey*, 755 N.W.2d at 757 (stating that a district court's limiting instruction on relationship evidence "lessen[s] the probability of undue weight being given by the jury to the evidence" (quotation omitted)). Further, by viewing videotape of the incident that formed the factual basis for the current charges, the jury was able to focus on the exact conduct that occurred in deciding whether to convict. *See State v. Dillon*, 532 N.W.2d 558, 558 (Minn. 1995) (stating that an error is less likely to be prejudicial if the evidence of guilt is strong). On these facts, we conclude that the district court did not abuse its discretion by admitting the relationship evidence.

## II.

Appellant separately argues that the district court also abused its discretion by admitting the three officers' testimony about the relationship evidence because the officers improperly testified as to L.C.'s statements, which is hearsay, and as to what L.C. said to other officers, which is double hearsay. Appellant objected to admission of this evidence at the pretrial hearing and at trial.

Subject to exceptions, hearsay is generally not admissible under Minn. R. Evid. 802. Respondent argues that the evidence from the three officers was admissible as exceptions to the hearsay rule, either as excited utterances or under the residual hearsay exception. Evidence of what L.C. said to the officers about her prior domestic assaults was hearsay because it was offered by a nondeclarant to prove the truth of the matter asserted—that appellant had participated in previous incidents of domestic assault against L.C. *See* Minn. R. Evid. 801(c) (defining hearsay). Some of the statements could be

6

admissible as excited utterances under Minn. R. Evid. 803(2) because they were preceded by startling events and L.C. arguably made the statements while still under stress caused by the events. *See State v. Edwards*, 485 N.W.2d 911, 914 (Minn. 1992) (defining parameters of excited utterance exception to hearsay rule). Respondent also argues that the evidence should be admissible under the residual hearsay exception because the statements were made with circumstantial guarantees of trustworthiness. *See* Minn. R. Evid. 807.

But "[o]n appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). When erroneously admitted evidence does not involve a constitutional issue, "the erroneously admitted evidence [must have] substantially influenced the jury verdict." *State v. Vang*, 774 N.W.2d 566, 578 (Minn. 2009). Respondent introduced a videotape of the assault, the arresting officer testified to his eyewitness observations about a portion of the assault, and some portions of the three officers' testimony with regard to prior domestic assault incidents was based on their personal observations. Thus, even if hearsay statements made by L.C. about the prior domestic assault incidents were erroneously admitted, appellant is not entitled to a new trial because the erroneously admitted evidence did not substantially influence the jury to convict.

**III.**

Appellant also argues that admission of hearsay statements that L.C. made to the officers who testified about the relationship evidence violated his constitutional confrontation rights. The federal and state constitutions prohibit "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004); *State v. Hull*, 788 N.W.2d 91, 100-02 (Minn. 2010) (noting that federal courts and Minnesota courts apply the same analysis to Confrontation Clause claims); *see* U.S. Const. amend. VI; Minn. Const. art. I, § 6. "At the core of this right is the ability to cross-examine witnesses because the principal evil at which the Confrontation Clause was directed was particularly the civil law's use of *ex parte* examinations as evidence against the accused." *State v. Hawkinson*, 829 N.W.2d 367, 377 (Minn. 2013) (quotation omitted). Appellate courts review de novo whether the admission of evidence violates a criminal defendant's constitutional right to confront witnesses. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006).

Appellant did not raise a Confrontation Clause issue at trial. The Minnesota Supreme Court has noted that some states require a specific objection on confrontation grounds to preserve a Confrontation Clause issue for appeal. *Hull*, 788 N.W.2d at 100. Normally, failure to raise an issue to the district court waives that issue on appeal. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996); *see State v. Carroll*, 639 N.W.2d 623, 629 n. 3 (Minn. App. 2002) ("A party may not obtain review by raising the same issue under

a different theory."), *review denied* (Minn. May 15, 2002). But the Minnesota Supreme Court has not decided whether a confrontation issue is waived when a defendant objects to the admission of testimony on hearsay grounds but fails to object under the confrontation clause. In *Hull*, the supreme court declined to answer this question because neither side raised the issue and "both sides agree[d] that plain-error review applie[d]." 788 N.W.2d at 100. In *State v. Rossberg*, 851 N.W.2d 609, 618 (Minn. 2014), the supreme court addressed a Confrontation Clause claim under the plain-error standard when the defendant failed to object to admission of hearsay testimony and "a Confrontation Clause challenge was not apparent" when the defendant objected only on hearsay grounds.

Under the plain-error rule, reversal of a conviction is warranted if: "(1) an error occurred in the district court, (2) the error was plain, and (3) the error affects the defendant's substantial rights. If the defendant satisfies this three-part test, [the court] then ask[s] whether the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding." *Hull*, 788 N.W.2d at 100 (quotation and citation omitted). An error affects a defendant's substantial rights if "the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998).

Again, because the government introduced a videotape of the actual assault of L.C., in which appellant could be seen physically attacking and intimidating L.C. and she could only be portrayed as the victim, any error in the district court's admission of the relationship evidence in violation of appellant's Confrontation Clause rights did not affect his substantial rights. The inculpatory evidence, which includes the videotape of

9

the assault that the jury saw twice and the eyewitness testimony of Officer Simmons, fully supports appellant's conviction. Therefore, appellant's argument fails on the third plain-error prong, and we need not consider the other plain-error factors because appellant cannot satisfy this prong. *See Rossberg*, 851 N.W.2d at 618 (stating "we need not and do not consider whether the district court committed error or whether any error was plain, because [the defendant] has not shown that any violation of the Confrontation Clause affected his substantial rights and thus he cannot obtain relief under the plain-error standard").

**IV.**

Finally, appellant argues that the district court erred by entering judgments of conviction and sentences for both the domestic assault and disorderly conduct offenses.[1] "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04 (2012). The state does not respond to this argument and concedes only that for sentencing purposes, as a lesser included offense, the disorderly conduct conviction occurred as part of the same behavioral incident. *See* Minn. Stat. § 609.035 (2012) (stating that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them"); *see also State v. Kebaso*, 713 N.W.2d 317,

---

[1] At trial, the district court ruled that under the facts presented the disorderly conduct offense could be submitted to the jury as a lesser included offense of the domestic assault offense. This ruling was made upon the motion of defense counsel, and appellant does not challenge this ruling on appeal.

322 (Minn. 2006) (stating that section 609.035 "prohibits multiple sentences . . . for two or more offenses that were committed as part of a single behavioral incident"). Because the disorderly conduct offense was charged as a lesser included offense of domestic assault, section 609.04 applies, and the district court could enter a judgment of conviction on only the more serious domestic assault offense. *Id.* We therefore reverse the disorderly conduct conviction and remand for the district court to vacate that conviction but retain the jury's finding of guilt on that offense in accordance with *State v. Pflepsen*, 590 N.W.2d 759, 765 (Minn. 1999) (requiring remand for district court to vacate judgment of conviction but retain finding of guilt on lesser included offense upon a district court's erroneous entry of judgments of conviction for both an offense and a lesser included offense).

**Affirmed in part, reversed in part, and remanded in part.**